**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JALEN BRADLEY, et al.,** | : | |
| | : | **Case No. 2:24-cv-03118** |
| **Plaintiffs,** | : | |
| | : | **Judge Michael H. Watson** |
| **v.** | : | |
| | : | **Magistrate Judge Kimberly A. Jolson** |
| **CITY OF COLUMBUS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

<u>**OPINION & ORDER**</u>

Before the Court is Defendants' Motion to Compel (Doc. 127). For the following reasons, the Motion is **GRANTED**. **On or before September 2, 2025**, Plaintiffs are **ORDERED** to (1) execute and produce to Defendants' counsel authorizations for the release of all records reflecting phone calls made or received or text messages sent or received from May 5, 2023, to May 6, 2023, from Plaintiffs' cell phone provider(s)/carrier(s); and (2) file a certification to the public docket stating they have done so. Plaintiffs are further **ORDERED** to respond to Defendants' July 2, 2025, discovery requests **by August 28, 2025**.

## I. BACKGROUND

Very briefly, this case is about the shooting of Plaintiffs Jalen Bradley and Ja-Dawn Bradley. (Doc. 92 (First Amended Complaint)). As alleged, in the early hours of May 6, 2023, the Bradleys were walking down High Street in Columbus, Ohio when they were "attacked by a group of males who were armed with weapons and began shooting at the Plaintiffs injuring both." (*Id.* at ¶¶ 7–9 (also alleging the group were "gang members")). Jalen returned fire. (*Id.* at ¶ 8). Then, as the two ran for cover, City of Columbus police officers Carl Harmon, Jacob Velas, and Ian Mansperger (the "Officer Defendants") began shooting in their direction despite not knowing "what exactly was

happening" or who they were shooting at.  (*Id.* at ¶¶ 9, 11–12).  Plaintiffs allege that Officer Harmon

fired thirty shots "striking each [Plaintiff]"; Officer Velas fired one shot; and Officer Mansperger

fired seven shots."  (*Id.* at ¶ 10).  Plaintiffs claim Officer Harmon continued to fire at Jalen after he

was on the ground, paralyzing him.  (*Id.* at ¶¶ 14, 15 (also alleging Officer Harmon handcuffed and

rolled Jalen over several times as he lay unconscious on the ground)).  After everything, Jalen was

shot in the back, neck, and head, and Ja-Dawn was shot in the chest, back, and foot.  (*Id.* at ¶ 25).

Plaintiffs allege Defendants' actions violated their Fourth, Fifth, Eighth, and Fourteenth

Amendment rights.  (*Id.* at ¶¶ 63, 64 (also alleging violations of Plaintiff's rights under 42 U.S.C.

§§ 1983, 1985, and 1988), ¶¶ 58–62 (appearing to raise claims under state law)).  They further allege

liability against the City of Columbus (the "City").  (*See generally id.*).  Plaintiffs seek compensatory

and punitive damages, as well as attorney's fees and costs.  (*Id.* at 12).

Following a recent status conference, the Court ordered Plaintiffs to file a Second Amended

Complaint by August 29.  (Doc. 119; *see also* Doc. 135 (transcript of the status conference

proceedings)).  On the same day, the parties notified the Court of a discovery dispute.  The Court

allowed Defendants to bring a Motion to Compel.  (Doc. 121).  The Motion is fully briefed and ready

for review.  (Docs. 127, 132, 138).

## II.    STANDARD

Two rules govern the Defendants' Motions to compel.  Rule 26(b) of the Federal Rules of

Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter

that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R.

Civ. P. 26(b)(1).  Rule 37, for its part, allows for a motion to compel discovery when a party fails to

answer an interrogatory submitted under Rule 33 or fails to provide proper responses to requests for

production of documents under Rule 34.  *See* Fed. R. Civ. P. 37(a)(1), (3).  "The proponent of a

motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted).  If the movant meets that burden, "the party resisting production has the burden of establishing that the information either is not relevant" or that the information's relevance "is outweighed by the potential for undue burden[.]" *O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 462 (S.D. Ohio Oct. 21, 2015).  But at base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-cv-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (citation modified).

## III.  DISCUSSION

Defendants' Motion seeks two things.  First, Defendants request the Court order Plaintiffs to execute authorizations that allow them to subpoena Plaintiffs' cell phone records for the hours surrounding the shooting.  (Doc. 127 at 6–7).  Second, Defendants pursue an order requiring Plaintiffs to provide substantive responses to their July 2, 2025, discovery requests about the evidentiary basis that "allowed Plaintiffs to assert a *Monell* claim and make the allegations in the First Amended Complaint in good faith under Rule 11."  (*Id.* at 3, 7–10).  The Court finds Defendants are entitled to both.

### A.     Cell Phone Records

To begin, Defendants served discovery requests on Plaintiffs in August 2024.  (*Id.* at 3).  Interrogatory #23 requested that Plaintiffs "[i]dentify all individuals with whom [they] communicated via phone, email, or any other social media account on May 5, 2023 or May 6, 2023." (*Id.*).  Plaintiffs provided identical answers: "My father, Jay [Bradley], after my [sibling] and I were shot." (*Id.*).  Relatedly, Request for Production No. 27 sought,

> Documents reflecting any calls made or received or any text messages made or
> received from any phone number you utilized to make or receive calls, or send or

receive text messages from April 1, 2023 through May 6, 2023. To the extent that you contend that you do not possess such documents, please execute, or to the extent you are not the subscriber have the subscriber execute, the attached release for each such phone number.

(*Id.*). Again, Plaintiffs provided identical responses. (*Id.*). Plaintiffs objected on the basis that the request was "overly broad, unduly burdensome, and not calculated to lead to discoverable evidence." (*Id.* (also stating that without waiving objection, Plaintiffs will provide Defendants with the information if/when they come into possession of it)).

Defendants contend that the interrogatory responses are inaccurate and incomplete. (*Id.*). For example, during his deposition, Mr. Jay Bradley testified that he spoke with Ja-Dawn before and after the shooting, rather than only after. (*See* Doc. 118-2 at 26, 71–72). And he spoke to Jalen before the shooting instead of after. (*Id.* at 71). As another example, Plaintiffs' supplemental initial disclosures identified Dayonna Rispress as having called Ja-Dawn "to tell her men were coming to shoot at her." (*Id.* (noting Ja-Dawn did not revise her interrogatory response to reflect this information)). But Ms. Rispress testified to calling Ja-Dawn after she heard gunshots, but because Ja-Dawn did not answer, they did not speak on the phone. (Doc. 118-1 at 89–90).

Against this backdrop, Defendants argue that the identities of who Plaintiffs communicated with the night before and the morning of the shooting are discoverable, and the Court should compel Plaintiffs to execute signed authorizations which would allow for the release of their cell phone records. (Doc. 127 at 6). The Court agrees Defendants should have this information.

    *1.   Relevance*

As noted, Defendants bear the initial burden of demonstrating that the communications at issue are relevant. *Gruenbaum*, 270 F.R.D. at 302. Under Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Relevance in this context is broad.

*Eischen v. Adaptation Fin. Advisers, Inc.*, No. 2:21-CV-5837, 2023 WL 3522785 (S.D. Ohio May 18, 2023) ("'Relevant evidence' is broadly defined as evidence that 'has any tendency to make a fact more or less probable than it would be without the evidence . . . .'" (citation omitted)).

Defendants argue that they are entitled to know who Plaintiffs communicated with, and when, on May 5 and 6. (Doc. 127 at 3). Defendants' Motion draws the Court's attention to the allegations that Plaintiffs were with a large group of people prior to the shooting, and they were shot at by "a group of males" before the Officer Defendants became involved. (Doc. 127 at 3). They say that "the identity of the people with whom Plaintiffs were communicating immediately prior to, during, or after the shootings" will aid in learning details about the "gang member" shooting, as well other factual issues. (Doc. 138 at 2–3 (also claiming deposition testimony of arguments or confrontations the night of the shooting conflict with allegations in Plaintiffs' First Amended Complaint)). The Court agrees that who may have knowledge of the shootings at issue and who Plaintiffs were with that night is clearly relevant. *Cf. Burghardt v. Ryan*, No. 5:19-CV-325, 2020 WL 4350049 (N.D. Ohio July 29, 2020) (finding information on a cell phone relevant to a § 1983 action when the party argued it was the best means of determining actions, activities, locations, and communications leading up to a police encounter)).

Plaintiffs' arguments to the contrary are not persuasive. Plaintiffs take issue that Defendants do not expressly identify a claim or defense for which Plaintiffs' communications are relevant. (Doc. 132 at 3). The Court notes that it would be difficult for Defendants to point to a specific defense when they have not filed answers. (*See, e.g.*, Doc. 5 (motion to dismiss the original complaint), 6 (same), 94 (motion to dismiss the amended complaint)). Procedural posture notwithstanding, the Court finds Defendants' explanation, even if brief, sufficient to meet Rule 26's wide reach. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("[D]iscovery is not limited to issues

raised by the pleadings, for discovery itself is designed to help define and clarify the issues.").

The Court also notes that Plaintiffs' argument against relevancy is somewhat disingenuous. According to Defendants, Plaintiffs requested the same or substantially similar information from the Officer Defendants. (Doc. 138 at 2). Even more, Defendants did not object to Interrogatory #23 on relevancy grounds either in whole or in part. (Doc. 127 at 4). And Plaintiffs' objection to Request for Production No. 27 for being "not calculated to lead to discoverable evidence" (*id.* at 5), does not speak to the relevance of the request under the standard outlined in the Federal Rules. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . Information within this scope of discovery need not be admissible in evidence to be discoverable."); *cf. Staggs v. Panda Express, Inc.*, No. 3:24-CV-00010, 2024 WL 4509101, at *1 (M.D. Tenn. Oct. 16, 2024*)* ("[T]he former provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' was deleted in the 2015 amendments to Rule 26 because of the incorrect reliance on that phrase to resist discovery. Instead, the concept . . . was replaced by the direct statement that information within the scope of relevancy 'need not be admissible in evidence to be discoverable.'" (citation omitted)).

In sum, the identities of the individuals with whom Plaintiffs communicated with on May 5 and 6, 2023, are relevant to this action.

    2.    *Proportionality*

The Court now considers what can reasonably be construed as Plaintiffs' objection to the proportionality of the request. When considering whether discovery is proportional to the needs of a case, the Court considers factors such as the "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Plaintiffs' arguments are odd. Plaintiffs assert Defendants' request that they produce signed authorizations for their cell phone records should be denied because: (1) Defendants have never obtained a warrant to search Plaintiffs' cell phones; (2) Plaintiffs have not given consent for their phone to be searched; (3) the information on Plaintiffs' phones may be privileged, private, or unrelated to this litigation; (4) counsel's agreement to release "any or all of Plaintiffs' phone information without consent or a court ordered warrant" would open him up to a malpractice claim; (5) the same would violate Plaintiffs' Fourth Amendment rights against unreasonable searches and Fifth Amendment rights against self-incrimination, and counsel cannot waive those rights on behalf of his clients; (6) compelling electronic imaging would constitute an abuse of discretion; and (6) forensic imaging requires more than a mere suspicion of relevant evidence. (Doc. 132 at 4–5).

These arguments are unmoored from Defendants' discovery request. Request for Production No. 27 seeks "documents reflecting any calls made or received or any text messages made or received from any phone number you utilized to make or receive calls, or send or receive text messages." (Doc. 127 at 3). The proposed authorizations permit release to Defendants' counsel from a cellphone carrier/provider "all records reflecting phone calls made or received or text messages sent or received from May 5, 2023 to May 6, 2023." (Doc. 138-1). Neither the request for production nor the authorizations, on their face, seek or permit the release of the content of any phone calls or text messages themselves. They certainly do not seek or permit electronic or forensic imagining. In other words, Plaintiffs overstate the impact that producing the records or signing authorizations have on their interests.

The Court is not saying that Plaintiffs' have no interest in records reflecting the identity of

who they spoke to around the time of the shooting. But to the extent Plaintiffs argue that the information is privileged or that compelling signed authorizations would violate their Constitutional rights, they have not provided any supporting authority. *Cf. John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008) (considering an order compelling imaging of state-owned and privately owned computers containing confidential and private information unrelated to the underlying litigation); *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. CIV.A. 2:06-CV-899, 2007 WL 1723509 (S.D. Ohio June 12, 2007) (considering a request for a "forensic expert to search defendant's computer systems, network servers and databases"). Indeed, such authorizations are a common discovery tool. *See, e.g.*, *Freeman v. Spoljaric*, No. 1:22-CV-203, 2024 WL 1895432 (S.D. Ohio Apr. 30, 2024) (ordering signed authorization forms for the release of Verizon wireless records); *Smith v. Nationwide Mut. Fire Ins. Co.*, No. 08-CV-12198, 2009 U.S. Dist. LEXIS 145616, at *7 (E.D. Mich. Apr. 27, 2009) (ordering "signed releases authorizing Defendant through its attorney to obtain account information from [the plaintiffs'] phone provider(s)"); *Pakenas v. State Farm Mut. Auto. Ins. Co.*, No. CIV.A. 05-60152, 2007 WL 2982552 (E.D. Mich. Aug. 2, 2007) (ordering either production of cell phone records or signed authorizations), *objections overruled*, No. 05-60152, 2007 WL 2982550 (E.D. Mich. Oct. 11, 2007).

Plaintiffs also have not demonstrated that producing the phone records or signing authorizations would be otherwise disproportional to the needs of this case. As noted above, who Plaintiffs communicated with the night of the shooting has importance to resolving issues in this litigation, and Defendants have sufficiently demonstrated the information they have from Plaintiffs—that they communicated only with their father after the shooting—may be inaccurate. (*See, e.g.*, Doc. 118-2 at 36, 71–72; Doc. 118-1 at 89–90). While Plaintiffs suggest Defendants can simply depose Plaintiffs about these discrepancies, Defendants are not required to rely on that

testimony alone or otherwise wait until after Plaintiffs' depositions to act.  *See, e.g.*, Fed. R. Civ. P. 26(d)(3)(A) ("[M]ethods of discovery may be used in any sequence").  Further, Defendants agreed to narrow the timeframe of its request to only the day of the shooting, which occurred in the early hours of the morning, and the day before.  (Doc. 127 at 7).  The Court finds this limitation in scope sufficiently addresses Plaintiffs' concerns about burden.  Accordingly, the Court concludes that the potential for undue burden does not outweigh the information's relevance.  And dragging this discovery out even more is unacceptable.

Therefore, **on or before September 2, 2025**, Plaintiffs are **ORDERED** to (1) execute and produce to Defendants' counsel authorizations for the release of all records reflecting phone calls made or received or text messages sent or received from May 5, 2023, to May 6, 2023, from Plaintiffs' cell phone provider(s)/carrier(s); and (2) file a certification to the public docket stating they have done so.

### B.       July 2, 2025, Discovery Requests

Defendants additionally seek an order compelling Plaintiffs to respond to discovery requests seeking "the evidentiary basis for Plaintiffs' claim against the City and certain allegations in the First Amended Complaint."  (Doc. 127 at 1).

As stated, Plaintiffs' First Amended Complaint alleges liability against the City, presumably under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  (*See generally* Doc. 92).  On July 2, Defendants served discovery requests upon Plaintiffs related to the evidentiary basis underlying this claim and other allegations in the First Amended Complaint.  (Doc. 127-2).  Plaintiffs provided the exact same response to each of the thirteen interrogatories and fourteen requests for production.  (*Id.*).

By way of example, Interrogatory #3 requested Plaintiffs to "[i]dentify in full the factual

basis for why you believe the City of Columbus is liable to you for the [e]vents described in the Amended Complaint, including any witnesses, documents, or recordings that you contend would support such liability." (Doc. 127-2 at 2). And Interrogatory #4 requested Plaintiffs to "[i]dentify in full the factual basis for your description of the individuals who shot at you on May 5-6, 2023 as 'gang members' . . . or 'criminals in a gang' . . . including any witnesses, documents, or recordings that you contend support those descriptions." (*Id.*). To both requests—and every other request served on July 2—Plaintiffs objected on the basis of prematurity, saying "Plaintiffs are required by this Court to file a second Amended Complaint on or before August 29th, 2025. This request pertains to the first Amended Complaint, and therefore seeks premature disclosure of information." (*Id.*).

The Court will not belabor the point. Plaintiffs' prematurity objections are baseless, and they cite no authority saying otherwise. Though Plaintiffs have been ordered to file a Second Amended Complaint, the First Amended Complaint is, at this moment in time, operative. And discovery is permitted "regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1).

Plaintiffs assert that "counsel is yet unsure what changes, additions, and/or deletions will be made to comply with the Court's order for its Second Amended Complaint." (Doc. 132 at 5). Even if true that some claims or factual allegations will ultimately differ, the information Defendants seek now would still have import on this case and be within the realm of permissible discovery. *See, e.g.*, *Heeter v. Bowers*, No. 2:20-CV-6481, 2025 WL 1725770 (S.D. Ohio June 20, 2025) ("When original pleadings are amended, the original allegations—though no longer judicial admissions—may still be admissible at trial as evidentiary admissions." (collecting

10

cases)).[1]  This is especially true when neither Defendants nor the Court have received any indication that Plaintiffs intend to drop their claims against the City or any other allegation for which Defendants seek a factual basis.

Further, Plaintiffs have been engaged in discovery for almost a year.  (*See* Docs. 11, 12).  They do not argue they have insufficient information to respond to Defendants' requests nor do they claim that providing responses would be overly burdensome.  Defendants do not have to wait to discover the factual basis for Plaintiffs' claims against the City and other allegations made in the First Amended Complaint.  (*See* Doc. 127-2); *cf. U.S. S.E.C. v. Blackwell*, No. 2:03-CV-63, 2004 WL 6829614, at *3 (S.D. Ohio Jan. 15, 2004) (citing Federal Rule of Civil Procedure 11 and noting the rationale behind postponing contention interrogatories was not present where a party conducted significant discovery and was "required" to have "adequate information to support the contentions in its Complaint").

The Court also finds merit in Defendants' claim that they would likely suffer prejudice if they are forced to wait until late September—at the very earliest—for responses to re-served requests, given the currently scheduled depositions in mid-September and the December 1 discovery deadline. (Doc. 119).  Plaintiffs make assurances that Defendants will not be prejudiced if they receive delayed responses because Plaintiffs "are confident the parties will be able to resolve any remaining discovery issues [or reschedule depositions] during that timeframe." (Doc. 132 at 6).  The Court does not share Plaintiffs' optimism.  As has been well-documented, discovery in this case has rarely gone to plan, which, in no small part, can be attributed to Plaintiffs.  (*See,*

---

[1] The Court once again notes that Plaintiffs' arguments against providing discovery responses are, to some extent, suspect.  Though they lament Defendants' discovery requests as premature because of the upcoming Second Amended Complaint, they themselves apparently served written discovery on Defendants only a day after Defendants filed the Motion at bar.  (Doc. 138).  Further, this is the second time the Court ordered Plaintiffs to file an amended complaint. (*See* Doc. 72).  Plaintiffs seemingly participated in discovery during the 60-day interim even knowing they would be filing an amended complaint.  (*See, e.g.*, Doc. 87).

*e.g.*, Doc. 110).  Relying on the parties' ability to quickly resolve discovery disputes or timely reschedule depositions is not a gamble the Court will take at this juncture.

In short, Plaintiffs cannot avoid responding to Defendants' discovery requests merely on prematurity grounds.  The Court's observation that "the complaint in this case is a mess" (Doc. 135 at 3), and subsequent order for a Second Amended Complaint (Doc. 119), does not justify Plaintiffs skirting their discovery obligations.  Consequently, Plaintiffs are **ORDERED** to respond to Defendants' July 2, 2025, discovery requests **by August 28, 2025**.

As a final note, the Court will not extend the deadlines contained in this order.  Plaintiffs' counsel are **WARNED** that they and their clients risk sanctions if they fail to meet them.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel (Doc. 127) is **GRANTED**.  **On or before September 2, 2025**, Plaintiffs are **ORDERED** to (1) execute and produce to Defendants' counsel authorizations for the release of all records reflecting phone calls made or received or text messages sent or received from May 5, 2023, to May 6, 2023, from Plaintiffs' cell phone provider(s)/carrier(s); and (2) file a certification to the public docket stating they have done so. Plaintiffs are further **ORDERED** to respond to Defendants' July 2, 2025, discovery requests **by August 28, 2025**.

IT IS SO ORDERED.


Date:   August 26, 2025                               /s/ Kimberly A. Jolson
                                                      KIMBERLY A. JOLSON
                                                      UNITED STATES MAGISTRATE JUDGE