**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **JALEN BRADLEY**, *et al.*, | |
| Plaintiffs, | Case No. 2:24-cv-03118 |
| v. | Judge Michael H. Watson |
| **CITY OF COLUMBUS**, *et al.*, | Mag. Judge Kimberly A. Jolson |
| Defendants. | |

**<u>DEFENDANT CITY OF COLUMBUS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT [ECF No. 148]</u>**

Plaintiffs Jalen and Ja-Dawn Bradley have failed for a third time to state a claim against the City of Columbus (the "City") under 42 U.S.C. § 1983 pursuant to *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed. 611. Pursuant to Fed.R.Civ.P 12(b)(6)), and for the reasons set forth in the attached Memorandum of Law, the City respectfully asks the Court to dismiss the claims against it in the Second Amended Complaint ***with prejudice***.

Respectfully submitted,

*/s/ David J. Dirisamer*
David J. Dirisamer (0092125)-Trial Atty.
Lee Ann Rabe (0077170)
Aaron D. Epstein (0063286)
*Assistant City Attorneys*
CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY
77 North Front Street
Columbus, Ohio 43215
(614) 645-7385
(614) 645-6949 (fax)
djdirisamer@columbus.gov
larabe@columbus.gov
adepstein@columbus.gov
*Attorneys for Defendants*

**MEMORANDUM IN SUPPORT**

I. **Background**

Plaintiffs filed their initial Complaint on May 6, 2024. Complaint, ECF No. 2. All Defendants moved to dismiss and, on March 26, 2025, the Court granted in part the City's Motion to Dismiss, ordering as follows:

> The Bradleys' Complaint also fails to state a § 1983 *Monell* claim against the City […] But, because amendment might not be futile, the Court GRANTS the Bradleys leave to amend their Complaint. The Bradleys SHALL attempt to cure the deficiencies in their § 1983 *Monell* claim against the City […] The Court CAUTIONS that if they fail to do so, this Court will dismiss their Complaint with prejudice, sua sponte if not on a motion.

Opinion and Order, ECF No. 72, PAGEID 534.

Plaintiffs filed an Amended Complaint (the "Second Complaint") on May 30, 2025. *See generally* Second Complaint, ECF No. 92. During a status conference on July 30, 2025, the Court noted that "the complaint in this case is a mess. […] So we need an amended complaint. […] I want to clean up everything that's wrong with the current one." 7/30/25 Transcript, ECF No. 135, PAGEID 2012-2013. Plaintiffs filed a Second Amended Complaint (the "Third Complaint") August 29, 2025, and this Motion timely follows.

II. **Allegations in the Third Complaint**

The Third Complaint makes the following factual allegations, which, for purposes of this Motion, the Court must accept as true:

On May 6, 2023, the Plaintiffs were attacked by a group of men who shot them. Third Complaint, ECF No. 148, PAGEID 2161, ¶¶ 8-9. Jalen Bradley returned fire. *Id*. As the Plaintiffs attempted to run for cover, Defendant Officers Carl Harmon, Jacob Velas, and Ian Mansperger arrived on the scene and opened fire on the Plaintiffs. *Id*., ¶ 10.

The Third Complaint alleges that the City is liable based on: (1) its policies and procedures; (2) its failure to train its officers; and (3) its alleged ratification of its officers' unlawful actions. In addition, the Third Complaint asserts a state-law claim against the City for intentional infliction of emotional distress (IIED). The specific allegations against the City are discussed in detail below.

### III. Legal Argument

#### A. Standard of Review

"To survive a motion to dismiss under Rule 12(b)(6), a challenged pleading must contain sufficient factual matter, *accepted as true*, to state a claim that is plausible on its face." *McManus & Assocs., LLC v. City of Centerville*, No. 3:25-cv-035, 2025 U.S. Dist. LEXIS 160761, *4 (S.D. Ohio Aug. 19, 2025), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (emphasis sic) (internal quotations omitted). A claim has "facial plausibility" when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. For a Rule 12(b)(6) motion to dismiss, the court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Christian v. Altaire Pharms., Inc.*, No. 20-6360, 2021 U.S. App. LEXIS 23751, *3 (6th Cir. Aug. 10, 2021), *quoting Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (internal quotations omitted).

#### B. The Law of Municipal Liability under *Monell*

In a Section 1983 action against a municipality, "liability attaches only under a narrow set of circumstances." *Wright v. City of Euclid*, 962 F.3d 852, 879 (6th Cir. 2020). To hold a municipality liable under Section 1983, a plaintiff must show that the municipality had a "policy

or custom" that caused the violation of her constitutional rights. *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed. 611 (1978). "There are four methods of showing the municipality had such a policy or custom: the plaintiff may prove: (1) the existence of an illegal official policy or enactment; (2) that the official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019), *quoting Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

The Third Complaint attempts to invoke all four of the possible *Monell* methods. But the facts alleged, even if true, would not result in *Monell* liability as a matter of law.

### 1. An illegal official policy or enactment

The Third Complaint alleges that the Plaintiffs were harmed by a number of City policies. Specifically, the Complaint alleges that the City has a policy, procedure, or custom of:

(a) Training officers "to shoot citizens front center mass, back center mass, and head shots * * *even if the officers are wrong *and the citizen was running away*;"

(b) "[P]roactive policing, which encourages their officers to aggressively pursue, confront, seize, and arrest citizens without cause or probable cause * * * just to see if the citizens might be violating the law;" and

(c) "[R]equiring their officers to be armed 24 hours per day, 7 days per week."

Third Complaint, ECF No. 148, PAGEID 2164, ¶¶ 25, 27-28 (emphasis added). These allegations do not state a *Monell* claim.

None of these three allegations are new. The second and third of the above three allegations were first made in the initial Complaint 18 months ago. *See e.g.*, Complaint, ECF No. 2, ¶¶ 23-24.

The Court explicitly held that the initial Complaint, with those allegations included, failed to state a *Monell* claim. Opinion and Order, ECF No. 72. The first of the three above allegations was added to the Second Complaint. Second Complaint, ECF No. 92, PAGEID 617, ¶ 24. Even with those allegations, the Court found that both the First Complaint and the Second Complaint failed to state any viable claim. *See* Opinion and Order, ECF No. 72 and 7/30/25 Transcript, ECF No. 135, PAGEID 2012-2013. Those same allegations, repeated without any additional factual support in the Third Amended Complaint, once again fail to state a viable *Monell* claim.

Nor are these allegations sufficient to state a *Monell* claim under an illegal policy theory, even if they had not already been rejected by this Court. *Monell* requires proof of "an ***illegal*** official policy or enactment." *See Westbrook v. City of Cincinnati*, 667 F.Supp.3d 665, 670 (S.D. Ohio 2023), *citing Burgess v. Fischer*, 735 F.3d at 478 and *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (emphasis added). For example, in *Jackson v. City of Cleveland*, the city issued official police orders that arguably told officers it was permissible to withhold exculpatory witness statements, a practice that would be unconstitutional. 925 F.3d at 834. There is nothing illegal about requiring police officers to keep their firearms accessible at all times. Therefore, that alleged policy could not create *Monell* liability.

Alternatively, the Third Complaint posits a policy encouraging police to arrest citizens randomly, just to see if a crime is being committed. But assuming such a policy exists (a highly dubious suggestion), it would be inapplicable to this case. According to the Third Complaint, Jalen Bradley was engaged in a running gun battle with third parties on the sidewalk of a busy city street. Third Complaint, ECF No. 148, PAGEID 2161, ¶¶ 8-9. Even if (as Plaintiffs allege), the officers continued to fire after the danger had objectively ended, this was not a situation where the officers engaged with Plaintiffs randomly and used deadly force without probable cause "just to see if the

4

citizens might be violating the law." *Id.*, PAGEID 2164, ¶ 25; *see, e.g.*, *Capps v. Metro. Gov't of Nashville-Davison Cnty.*, No. 3:23-cv-01141, 2025 U.S. Dist. LEXIS 33536, *32, *citing Kisela*, v. Hughes 584 U.S. 100, 105 ("an officer does not violate a suspect's clearly established rights by using deadly force in response to a suspect's threat of deadly force."). Here, Jalen Bradley did not just threaten deadly force—he admittedly used it. Therefore, because the alleged policy is inapplicable to the facts as alleged in the Complaint, this cause of action should be dismissed.

Finally, there remains the allegation that the City, by policy, trains its officers to shoot fleeing citizens in the head and back. Note that Plaintiffs do not allege that the policy is limited to shooting fleeing *suspects* in the back. The City has a policy, they claim, to shoot to kill fleeing *citizens*, whether they are believed to have committed a crime or not. This is another false and inflammatory allegation for which the City may later seek redress. But for present purposes, the relevant point is that the Third Complaint contains nothing more than a bare allegation of such a supposed policy. There are no facts pleaded to suggest the existence of the policy, which is insufficient to state a *Monell* claim. *See, e.g., Lee v. Wellpath Corp.*, No. 2:24-cv-39, 2025 U.S. Dist. LEXIS 142536, *7 (W.D. Mich. July 28, 2025) (holding that alleging the mere existence of a policy is insufficient to state a *Monell* claim); *see also Broyles v. Corr. Med. Servs.*, 6th Cir. No. 08--1638, 2009 U.S. App. LEXIS 5494 (Jan. 23, 2009) (affirming the granting of a motion to dismiss a § 1983 claim because "bare allegations of a custom or policy, unsupported by any evidence, are insufficient to establish entitlement to relief.")

The Third Complaint fails to state a *Monell* claim based on an unlawful policy.

    **2.**    **Ratification**

The Third Complaint alleges that the City ratified the allegedly-illegal conduct of the three Defendant Officers after that conduct occurred. For *Monell* purposes, ratification occurs "when an

5

individual with policymaking authority issues a final decision affirming a subordinate's decision and, thereby, adopts it as municipal policy." *Hester v. Chester Cnty.*, Case No. 1:24-cv-1034-STA-jay, 2024 U.S. Dist. LEXIS 137323 (W.D. Tenn. Aug. 2, 2024), *22, *citing St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). "The Sixth Circuit recognizes two methods for finding ratification: (1) when an individual with policymaking authority issues a final decision affirming a subordinate's decision on the merits or otherwise, and thereby adopting it as municipal policy, and (2) when a policymaker fails to meaningfully investigate the acts of a subordinate." *Meyers v. Cincinnati Bd. of Educ.*, 343 F.Supp.3d 714, 729 (S.D. Ohio 2018).

With respect to the first type of ratification—a final decision by a policymaker affirming the subordinate's action—the Third Complaint offers a single factual allegation in support: "upon information and belief, the Defendant City of Columbus and/or Defendant City of Columbus Division of Police and/or the State of Ohio Attorney General's office recommended that all the Defendant Police Officers to [sic] be nominated for awards for valor for their actions in shooting the Plaintiffs." Third Complaint, ECF No. 148, PAGEID 2163, ¶ 22. This allegation fails to state a claim for *Monell* ratification liability for multiple reasons.

Once again, this allegation is not new. A nearly identical allegation was made by Plaintiffs in their Second Complaint. Second Complaint, ECF No. 92, PAGEID 616, ¶ 21. Nevertheless, the Court found that the Second Complaint did not viably state a claim, and once again required Plaintiffs to replead. 7/30/25 Transcript, ECF No. 135, PAGEID 2012-2013. Repeating this same allegation, once again without any supporting factual allegations, is still insufficient as a matter of law to state a *Monell* claim.

Beyond that, the most obvious defect in this allegation is that it does not identify the alleged City policymaker. A complaint that merely alleges the political subdivision ratified the conduct,

6

without identifying a specific policymaker, fails to state a ratification claim and is subject to dismissal. *See, e.g., Sweat v. Butler*, 90 F.Supp.3d 773, 785-786 (W.D. Tenn. 2015) (dismissing *Monell* ratification claim because the complaint "does not identify an official with final decision-making authority, nor does it state that such an official approved an investigation"); *Campbell v. Hamilton Cty.*, No. 1:22cv315, 2023 U.S. Dist. LEXIS 172829, *20 (S.D. Ohio Sept. 27, 2023) (same).

Indeed, the Third Complaint does not even allege that the City ratified the conduct at all. Instead, the allegation is that a commendation was issued by "the Defendant City of Columbus and/or Defendant City of Columbus Division of Police ***and/or*** the State of Ohio Attorney General's office." Third Complaint, ECF No. 148. PAGEID 2163, ¶ 22. The City has no control over, and thus no legal responsibility for, a decision made by the Ohio Attorney General. Compounding the uncertainty, the Plaintiffs make this allegation, along with several others in the Third Complaint, "upon information and belief," which is improper under *Iqbal* unless the relevant facts are "peculiarly within the possession and control of the defendant." *Almaraz v. State Farm Fire & Cas. Co.*, No. 24-cv-11497, 2025 U.S. Dist. LEXIS 77402, *10 (E.D. Mich. Apr. 23, 2025), *quoting Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation omitted). Whether the City or the State gave the officers public commendations is obviously not a fact known to the City alone, and not to the Plaintiffs, particularly after Plaintiffs have had well over a year to take any desired discovery in this case. The plain language of the Third Complaint alleges that it may have been the State that was solely responsible for providing the Defendant Officers with an award, and therefore it cannot possibly state a claim against the City based on such an allegation.

Alternatively, the Third Complaint makes multiple efforts to state a claim under the second *Monell* ratification prong, for "fail[ing] to meaningfully investigate the acts of a subordinate." Throughout the Third Complaint, Plaintiffs allege a host of citizen complaints against Officer Harmon, for everything from excessive force to forced entry to rudeness. Third Complaint, ECF No. 148, PAGEID 2165-2167, ¶ 32-34. Once again, these allegations are not new, and are little more than a repeating of allegations previously made that the Court previously found insufficient to state a claim. Second Complaint, ECF No. 92, PAGEID 621-623, ¶¶ 42-52; 7/30/25 Transcript, ECF No. 135, PAGEID 2012-2013.

Once again, these allegations are also insufficient as a matter of law. The Third Complaint does ***not*** allege that a policymaker failed to meaningfully investigate the accusations. *See generally* Third Complaint, ECF No. 148. As noted above, Plaintiffs never identify the relevant policymaker. *Id.* In addition, although the Third Complaint indicates that Officer Harmon was the subject of investigations, it never reveals the results of those investigations,[1] never explains ***why*** the investigations were insufficient, and indeed never alleges the investigations were inadequate ***at all***. *Id.*

Instead, Plaintiffs rely on allegations that the City "should have been on actual or constructive notice" about Officer Harmon based on these purported prior accusations. Third Complaint, ECF No. 148, PAGEID 2165, ¶ 32. Even if that were true, however, "acquiescence" is not the same as "ratification." *O'Neill v. Adams Cty. Jail*, No. 1:23-cv-200, 2024 U.S. Dist. LEXIS 142850, *17, (S.D. Ohio Aug. 12, 2024), *quoting Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) ("'Ratification of a subordinate's action requires more than

---

[1] Curiously, the only exception concerns a firearm discharge that occurred on July 26, 2024, *after* the shootings at issue in this case. Third Complaint, ECF No. 148, PAGEID 2166, ¶ 33. That incident cannot have been the moving force behind the officers' actions in this case, and therefore should not have been included in the Third Complaint.

8

acquiescence—it requires an affirmative approval of a particular decision made by a subordinate'").

A *post-hoc* commendation cannot constitute ratification under *Monell*. In plain terms, the "ratification" refers to approval of a ***prior*** instance of unconstitutional behavior, ***not*** ratification of the actions at issue in the same lawsuit. That is, *Monell* liability, even in the ratification context, must still arise from a policy, and cannot be premised on a single instance of *post-hoc* approval. *See Waters v. Madson*, 921 F.3d 725, 743 (8th Cir. 2019) ("Chief Wise's after-the-fact determination did not cause the alleged violations of Appellants' constitutional rights [and] Appellants, therefore, cannot premise a *Monell* claim on Chief Wise's action"); *see also Burgess*, 735 F.3d at 479 (holding that the supervisor's "after-the-fact approval of the investigation, which did not itself cause or continue a harm against [the plaintiff], was insufficient to establish the *Monell* claim); *Tompkins v. Frost*, 655 F.Supp. 468, 472 (E.D. Mich. 1987) (holding that "wrongful conduct after an injury cannot be the proximate cause of the same injury").

For these reasons, the Third Complaint fails to state a claim for *Monell* liability against the City of Columbus under a ratification theory.

### 3. Inadequate training

The Third Complaint makes a single allegation concerning a lack of training: "The directives of the Defendant City of Columbus Division of Police regarding deadly force do not contain any guidance or training whatsoever as to how its officers should deal with individuals who are engaged in lawful or potentially lawful self-defense or stand-your-ground behavior." Third Complaint, ECF No. 148, PAGEID 2165, ¶ 30. Once again, this allegation is not new, but is drawn almost entirely from an allegation in the Second Complaint that the Court previously found insufficient to state a claim. Second Complaint, ECF No. 92, PAGEID 618, ¶ 34; 7/30/25

9

Transcript, ECF No. 135, PAGEID 2012-2013. And once again, this allegation fails to state a claim.

Inadequate police training may serve as the basis for § 1983 liability against a municipality "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In order to state a claim for failure-to-train, "the plaintiff must allege: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Arsan v. Keller*, No. 3:17-cv-121, 2018 U.S. Dist. LEXIS 138979, *25 (S.D. Ohio Aug. 16, 2018), *quoting Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (internal quotation omitted). According to the United States Supreme Court, a municipality's culpability for a deprivation of rights "is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011), *citing Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) (for the proposition that a policy of inadequate training is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*").

It is important to distinguish between situations where the officer was trained to comply with an illegal policy, and situations where the officer allegedly received no training whatsoever. In the latter scenario, where there is no allegation that the injury resulted from an unconstitutional custom or policy, a municipality is not liable for a single incident resulting in a constitutional violation. *Oklahoma City*, 471 U.S. at 823-824. Thus, in order to state a claim for deliberate-indifference failure-to-train, a plaintiff must allege "prior instances of unconstitutional conduct demonstrating that the [defendant] has ignored a history of abuse and was clearly on notice that

10

the training in this particular area was deficient and likely to cause injury." *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010), *quoting Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).

The Third Complaint does not allege prior instances of Columbus Police Officers shooting armed citizens engaged in lawful stand-your-ground-self-defense. For this reason, the claim should be dismissed. *See Spainhoward v. White Cty.*, 421 F.Supp.3d 524, 544 (M.D. Tenn. 2019) (dismissing negligent training claim because plaintiff failed to allege "*any* facts that there were prior instances of similar misconduct to show that White County was on notice that its training and supervision * * * was deficient") (emphasis sic).

Courts occasionally permit single-instance negligent-training claims to proceed, but only where the training provided is "so recklessly or grossly negligent that future misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Williams v. Ohio*, No. 1:25 CV 700, 2025 U.S. Dist. LEXIS 109496, *9 (N.D. Ohio June 10, 2025), *citing Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). Here again, Plaintiffs have not pleaded any facts to suggest that the City acted with this degree of deliberate indifference. *See Carter v. Louisville Metro. Police Dept.*, No. 3:22-cv-00673-RGJ, 2023 U.S. Dist. LEXIS 163227, *26 (W.D. Ky. Sept. 13, 2023); *see also McIntosh v. Butler Cty. Children's Servs. Bd.*, No. 1:09-cv-274-SAS-TSH, 2010 U.S. Dist. LEXIS 78115, *14 (S.D. Ohio March 24, 2010) (dismissing claim because plaintiffs failed to allege any facts suggesting that the conduct was an almost inevitable or substantially certain byproduct of the lack of training).

For these reasons, the Third Complaint fails to state a claim for *Monell* liability against the City of Columbus based on a theory of inadequate training.

### 4. A custom of condoning constitutional violations

The final method for alleging and proving *Monell* liability is to show that the municipality had a custom of tolerance for, or acquiescence in, constitutional violations. To sustain the claim, a plaintiff must show: (1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that its deliberate indifference and failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's custom was the moving force or direct causal link in the constitutional deprivation. *Doe v. Claiborne Cty.*, 103 F.3d 495, 508 (6th Cir. 1996). The plaintiff must show that custom was "so widespread, permanent, and well-settled as to have to force of law." *Jones v. Muskegon Cty.*, 625 F.3d 935, 946 (6th Cir. 2010), *quoting Kinzer v. City of W. Carrollton*, No. 3:07-cv-111, 2008 U.S. Dist. LEXIS 61203, at *14 (S.D. Ohio Aug. 5, 2008).

In their Third Complaint, Plaintiffs allege that the City has a custom of "ignoring and allowing officers to use deadly and excessive force, and a [sic] 'condoning an act first then think later' attitude. Third Complaint, ECF No. 148, PAGEID 2165, ¶ 23. Once again, this allegation is not new—but merely a very lightly edited repeating of an allegation that Plaintiffs first made 18 months ago. Complaint, ECF No. 2, ¶ 20. It was insufficient to state a claim then, and it is insufficient to state a claim now. Once again, Plaintiffs offer no factual support for these allegations, other than the accusations of misconduct leveled at Officer Harmon (discussed above). And those allegations are insufficient as a matter of law. In fact, the Third Complaint actually removes every single allegation about purported instances of any prior uses of force by City police officers other than Officer Harmon that had appeared in the Second Complaint. *Compare* Second Complaint, ECF No. 92 PAGEID 319-320, ¶¶ 38-40 and Third Complaint, ECF No. 148.

First, as discussed above, Plaintiffs fail to allege any facts that would allow this Court to find that Officer Harmon's conduct was unconstitutional, thus establishing a pattern and a route to potentially holding the City liable for the harm to Plaintiffs. The Sixth Circuit has noted that the "mere existence of complaints" would not be sufficient to establish a pattern for purposes of municipal liability. *Stanfield v. City of Lima*, 727 Fed. Appx. 841, 852 (6th Cir. 2018), citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 430-433 (6th Cir. 2005); *see also Stager v. Hanshaw*, No. 1:23-cv-120, 2024 U.S. Dist. LEXIS 65522, *14-15 (allegations about previous complaints not enough). Plaintiffs do not include among their allegations any finding—by a court, a jury, or any other entity—that the events described were indeed unconstitutional, relying solely on their own characterization of the events. Third Amended Complaint, ECF No. 148, PAGEID 2165-2166, ¶¶ 32-34. As a result, they have only made allegations as to conduct—not **misconduct**. There must be a record of illegal activity before a municipality can take notice that there is a pattern. *Stanfield*, 727 Fed. Appx. at 851-852; *see also Assi v. Hanshaw*, 625 F. Supp. 3d 722, 751 (S.D. Ohio 2022) (allegations of previous lawsuits insufficient to state a pattern where, *inter alia*, there were no allegations of the outcome of those lawsuits).

Second, allegations regarding a lack of discipline for Officer Harmon are insufficient as a matter of law because a "purported failure to discipline a single officer, as opposed to a systematic policy, cannot support a claim of municipal liability." *Est. of Moore v. City of Warren*, No. 21-12267, 2024 U.S. Dist. LEXIS 15548, * 24 (E.D. Mich. Jan. 29, 2024, *quoting Sexton v. Kenton Cty. Det. Ctr.*, 702 F.Supp.2d 791 (E.D. Ky. 2010) (internal quotation omitted).

Third, the allegations against Officer Harmon lack the requisite degree of similarity. For a custom of tolerance claim to survive a motion to dismiss, a plaintiff must "demonstrate[ ] a pattern ... of similar claims ...." *Burgess*, 735 F.3d at 478. The alleged pattern of similar unconstitutional

13

conduct does not have to be identical, or almost identical, to what the plaintiff alleges in his case. *Franklin v. Franklin Cty.*, 115 F.4th 461, 472 (6th Cir. 2024). However, the similarity between the prior examples and the current situation must be "particularized," meaning that "the prior examples of wrongdoing must violate the same constitutional rights [as the plaintiff's] and violate them ***in the same way***." *Berry v. Delaware Cty. Sheriff's Office*, 796 Fed. Appx. 857, 862-63 (6th Cir. 2019) (emphasis added). Thus, in *Franklin*, where the plaintiff alleged that she was sexually assaulted in jail, the Sixth Circuit held that she needed "to show that there was a pattern of Eighth Amendment violations at the Jail (i.e., the same constitutional right that [the assailant] violated), that involved some sort of sexual assault on inmates (i.e., the right was violated in the same way as Franklin's was)." *Franklin*, 115 F.4th at 473.

The Third Complaint does not come close to satisfying that level of similarity. Some of the exemplars involve excessive force by Officer Harmon upon arrestees (arguably the same Constitutional violation), but none involve a violation in the same manner (shooting a suspect to secure his arrest). The Third Complaint refers to prior allegations of "forced entry" against Officer Harmon, without explanation, but whatever the circumstances it is not similar to the constitutional violation alleged in this case. Third Complaint, ECF No. 148, PAGEID 2166, ¶ 33. Even further afield, many of the purported examples of Officer Harmon's prior behavior do not involve Fourth Amendment violations at all, such as cursing or speaking in an angry tone.

Plaintiffs have failed to allege a custom or policy that would give rise to municipal *Monell* liability. The City asks the Court to dismiss the *Monell* claims set forth in Counts II, III, and IV of the Third Complaint.

### C. The State-Law Tort Claim Against The City Is Barred By Political Subdivision Tort Immunity

The Third Complaint sets forth three state-law tort claims: assault and battery (Count V, ¶ 68); (2) intentional infliction of emotional distress (Count VI, ¶ 74); and negligent infliction of emotional distress (Count VII, ¶ 82). To the extent any of these three claims are asserted against the City, each of the three should be dismissed, based on the Court's prior order dismissing Plaintiffs' previously asserted state-law claims with prejudice, as stated in the Officer Defendants' Motion to Dismiss being filed contemporaneously herewith and incorporated here.

But even if the Court rejects that argument, none of Plaintiffs' state-law claims can survive as against the City. The claims for assault and battery and negligent infliction of emotional distress are expressly brought against the individual officers only. Third Complaint, ECF No. 148, PAGEID 2172, 2174, ¶¶ 68-69; 82. However, Count Seven, for IIED, is brought against the City, as well. *Id.*, ¶¶ 71, 75. The allegation appears to be that the City deliberately caused emotional harm due to "having policies which caused the Plaintiffs serious harm," *id.*, ¶ 71, which does not make much sense. Whatever Plaintiffs' actual theory may be, the state-law claim for intentional infliction of emotional distress against the City must be dismissed based on immunity.

Whether a political subdivision is entitled to immunity is a question of law. *Conley v. Shearer*, 64 Ohio St.3d 284, 292 (1992); *Dearth v. City of Columbus*, 2019-Ohio-556, ¶ 28 (10th Dist.). R.C. Chapter 2744 establishes a three-step analysis for assessing whether a political subdivision is immune from liability. *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 270.

The analysis begins with the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions. R.C. 2744.02(A)(1); *Pelletier v. Campbell*, 153 Ohio St.3d 611, 615. "In most cases, the broad immunity of R.C. Chapter 2744 provides political subdivisions a complete defense to a negligence

15

action." *Doe v. Greenville Cty Sch.*, 171 Ohio St.3d 763, 765. The City of Columbus is a political subdivision, for purposes of R.C. Chapter 2744, *Kiser v. Huntley*, 1995 Ohio App. LEXIS 3518, *7 (10th Dist.), citing R.C. 2744(F), and therefore presumptively has immunity.

Once immunity is established under R.C. 2744.02(A)(1), the next step in the analysis is to determine whether any of the five exceptions to immunity in subsection (B) of the immunity statute apply. Subsection (B), however, does not waive a political subdivision's immunity against *intentional* tort claims. *See, e.g., Stager v. Hanshaw*, No.1:23-cv-120, 2024 U.S. Dist. LEXIS 65522, *27 (S.D. Ohio Apr. 10, 2024) (defamation); *Alabasi v. City of Cleveland*, No. 1:20-CV-01933-CEH, 2021 U.S. Dist. LEXIS 160803, *8 (N.D. Ohio Aug. 25, 2021) (IIED); *Ohio ex rel. Faulkner v. City of Middleton*, 688 Fed.Appx. 377, 380-381 (6th Cir. 2017) (malicious prosecution and abuse of process). Therefore, the IIED claim against the City must be dismissed.

### D. Plaintiffs' Claim for Punitive Damages as Against the City Fails as a Matter of Law

Even if the Court does not dismiss Plaintiffs' *Monell* claims in their entirety, there is no dispute that "a municipality is immune from punitive damages under 42 U.S.C. §1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). As a result, courts have specifically dismissed claims seeking punitive damages from municipalities because such damages were unavailable as a matter of law. *See, e.g., Stafford v. Sugarcreek Twp.*, No. 3:22-cv-136, 2023 U.S. Dist. LEXIS 151987, *5 (S.D. Ohio Aug. 28. 2023); *Hora v. Risner*, No. 3:18-cv-344, 2020 U.S. Dist. LEXIS 146014, *28 (S.D. Ohio Aug. 13, 2020). Furthermore, under Ohio law, specifically R.C. 2744.05(A), Plaintiffs cannot recover punitive damages against the City under any Ohio state law claim, even if any such claim survives dismissal. *Noble v. YMCA*, No. 2:19-cv-5094, 2021 U.S. Dist. LEXIS 28962, *26 (S.D. Ohio Feb. 17, 2021). Therefore, any claim against the City for

punitive damages, which Plaintiffs purport to broadly seek as against all Defendants, fails as a matter of law and should be dismissed. Third Complaint, ECF No. 148, PAGEID 2174.

## IV. Conclusion

The Third Complaint fails to state a claim against the city of Columbus, and the state-law tort claims is barred by immunity. For these reasons, the City respectfully asks the Court to dismiss all claims against it *with prejudice*.

Respectfully submitted,

*/s/ David J. Dirisamer*
David J. Dirisamer (0092125)-Trial Atty.
Lee Ann Rabe (0077170)
Aaron D. Epstein (0063286)
*Assistant City Attorneys*
CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY
77 North Front Street
Columbus, Ohio 43215
(614) 645-7385
(614) 645-6949 (fax)
djdirisamer@columbus.gov
larabe@columbus.gov
adepstein@columbus.gov

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically with the Court and served on all parties of record via the Court's CM/ECF filing system September 12, 2025.

*/s/ David J. Dirisamer*
David J. Dirisamer (0092125)
