**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JALEN BRADLEY, et al.,** | : | |
| | : | **Case No. 2:24-cv-03118** |
| **Plaintiffs,** | : | |
| | : | **Judge Michael H. Watson** |
| **v.** | : | |
| | : | **Magistrate Judge Kimberly A. Jolson** |
| **CITY OF COLUMBUS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

Before the Court are Plaintiffs' two Motions to Compel (Docs. 246, 251) and Defendant's Motion for Leave to Take Depositions After the Close of Discovery (Doc. 280). For the following reasons, Plaintiffs' Motions are **DENIED**, and Defendants' Motion (Doc. 280) is **GRANTED**.

## I. BACKGROUND

The Court has summarized the allegations underlying this action. In particular,

> On May 6, 2023, [Plaintiffs Jalen and Ja-Dawn Bradley] were walking along High Street in the Short North neighborhood of Columbus, Ohio. [Doc. 148 ¶ 8]. While they were walking down the street, a group of armed males began shooting at them, causing injuries to both. *Id.* ¶ 9. Jalen was armed with a firearm, and he returned four shots at the group of males before Plaintiffs ran. *Id.* As Plaintiffs were running for cover from the shootout, Officer Harmon was also in the area that evening and responded to the gunfire. *Id.* ¶ 10. Despite this lack of information, Officer Harmon opened fire on Plaintiffs. *Id.* ¶ 10. Plaintiffs allege that Officer Harmon "fired his weapon at [Plaintiffs] thirty (30) times or more, including reloading and shooting eleven (11) more times at a crawling and subdued Jalen Bradley. . . . Officer Harmon caused Plaintiffs serious injuries—namely, Jalen was hospitalized and paralyzed, and Ja-Dawn was shot four times and hospitalized. *Id.* ¶ 16. Because Officer Harmon continued to roll Jalen back and forth on the ground as he was handcuffed and unconscious, Plaintiffs contend that he suffered additional injuries, pain, and suffering. *Id.* ¶ 16. Plaintiffs allege that Jalen's gunfire was in self-defense and, at the time Officer Harmon was shooting at Plaintiffs, neither Plaintiff posed a threat. *Id.* ¶¶ 19-20[.]
>
> Following the May 2023 police shooting, the City recommended Officer Harmon for a medal of valor, delayed its investigation into the incident, and ultimately found that

> his conduct did not violate the City's policies or procedures. *Id.* ¶¶ 44, 46.
>
> Plaintiffs additionally contend that the City has ignored Officer Harmon's history of excessive force. Specifically, Plaintiffs allege that the City has "known for years that [Officer] Harmon has a propensity for violence, overly aggressive behavior, and acquiring a number of citizen complaints as well as the misuse of firearms." *Id.* ¶ 62. And the City "has failed to reprimand, punish, discipline, retrain, or dismiss Officer Harmon." *id.* Plaintiffs go on to allege a history of citizen complaints against Officer Harmon, including (among other things) "[complaints for excessive force regarding incidents that occurred on: August 6, 2016[, ] and September 17, 2018," *Id.* ¶ 33(i); "[o]ne complaint for discharge of a firearm regarding an incident that occurred on March 18, 2016," *Id.* ¶ 33(iv); and an investigation into an incident where a citizen reported that Officer Harmon ["]entered her yard, pointed his gun at her dog, and cursed at the complainant and her children." *Id.* ¶ 34(iv).

(Doc. 268 at 1–2).

Early in this case, the Court issued a scheduling order, and the parties engaged in an arduous discovery period that required many deadline extensions. During this period, the parties exchanged several rounds of written discovery and conducted depositions, including Defendant Harmon's deposition on October 30, 2025. (Docs. 164, 282). Shortly before the close of discovery, Plaintiffs filed two Motions to Compel, the first concerning a document request for a psychological evaluation of Harmon and the second concerning one of Harmon's deposition answers. (Docs. 246, 251). Because issues raised in the motions implicated issues central to Defendants' motions to dismiss pending at the time, the Court held the discovery motions in abeyance and stayed briefing. (Doc. 256).

In ruling on the motions to dismiss, the Court allowed the following claims to proceed: "Plaintiffs' § 1983 individual capacity claim (Count One), assault and battery claim (Count Five), and IIED claim (Count Six)" against Harmon and "Plaintiffs' *Monell* claims based only on (1) illegal official policy as to the Paragraph 23 Policy, (2) failure to train in self-defense and stand-your-ground situations, (3) failure to supervise Officer Harmon, and (4) custom of tolerance (Counts Two, Three, and Four)" against the City of Columbus (the "City"). (Doc. 268 at 26–27).

The Court then reset briefing on the two Motions to Compel. (Doc. 274). Defendants subsequently filed a Motion to take two depositions after the close of discovery. (Doc. 280). All three discovery motions are fully briefed and ready for review. (Docs. 246, 251, 280, 283, 284, 287, 292, 293, 294).

## II. STANDARD

Federal Rule of Civil Procedure Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). And Rule 37 allows for a party seeking discovery to move for an order to compel that discovery. Fed. R. Civ. P. 37(a)(1). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

## III. DISCUSSION

The Court begins with Plaintiffs' Motions before turning to Defendants' and the case schedule.

### A. Motion to Compel Psychological Evaluation

On August 12, 2025, Plaintiffs served on Defendant Harmon requests for production of

documents. (Doc. 246-1 at 1–4). Request for Production 13 asks Harmon to "produce all psychological records and employment records for Columbus police officer Carl Harmon for all the years he has been or was employed with the City of Columbus Division of Police." (*Id.* at 3). Harmon objected that psychological records "are not relevant to any pending claim or defense or proportional to the needs of the case, and the request is harassing. In addition, any psychological records are subject to a physician-patient and/or psychotherapist-patient privilege, which has not been waived and will be maintained." (*Id.*). Plaintiffs were dissatisfied with this objection. (*See, e.g.*, Doc. 167). In working through the dispute, the City offered to search for Harmon's psychological records in their possession and produce anything not already produced. (Doc. 176).

Subsequently, the City produced a one-page fitness to return to duty letter signed by Dr. John Malinky, Ph.D., that the Columbus Division of Police's human resources department received on May 18, 2023. (Doc. 246-5). The letter indicates that Dr. Malinky conducted a "Critical Incident Stress Debriefing interview and evaluation" for Harmon after the events at issue in Plaintiffs' complaint. (*Id.*). He noted six psychological questionnaires he administered. (*Id.*). He then provided, "[b]ased on the above information, it is my professional opinion, with a reasonable degree of psychological accuracy, that Officer Harmon is able to safely perform his job as a police officer." (*Id.*). He also stated "[i]f there are any questions, please feel free to contact me." (*Id.*). The City received no other information or records from Dr. Malinky. (Doc. 253 at ¶ 6). Plaintiffs now want the Court to compel Harmon to produce the questionnaire responses mentioned in Dr. Malinky's letter and the doctor's notes. (Doc. 246 at 8). They argue the records are relevant to the claims and defenses asserted in this case and are not privileged. (*See generally id.*).

As an initial matter, the Court takes a moment to define the contours of Plaintiffs' ask. Plaintiffs' Request for Production 13 was directed at Defendant Harmon only. (Doc. 246-1 at 1).

Plaintiffs did not attach to their Motion a similar request directed at the City. (*See generally* Doc. 246). Nor does their motion request enforcement of a subpoena directed at Dr. Malinky. (*Id.*). Further, the Motion asks the Court specifically to "order Defendant Harmon to produce the requested psychological records." (Doc. 246 at 8). For these reasons, to the extent that the parties' arguments cover reasons why the Court should or should not compel the City or Dr. Malinky to produce the records sought, those arguments are not proper. Still, the Court considers the parties' arguments as they pertain to Defendant Harmon.

*1. Relevance*

To begin, Plaintiffs claim the records underlying Dr. Malinky's letter are relevant to the claims and defenses in this case. (Doc. 246 at 3–6). Specifically, they argue the records matter for their *Monell* claim against the City; to "any potential use of excessive force" on the part of Harmon; and to Harmon's affirmative defense asserted under Ohio Revised Code Chapter 2744. (*Id.*; *see also* Doc. 292 at 1–3). The Court considers the records against each.

*a. Monell Claims*

As noted above, Plaintiffs' surviving *Monell* claims under 42 U.S.C. 1983 against the City allege an illegal official policy of "ignoring and allowing officers to use deadly and excessive force, and a 'condoning an act first then think later' attitude"; failure to train in self-defense and stand-your-ground situations; failure to supervise Defendant Harmon; and a custom of tolerance of excessive force. (*See* Doc. 268 at 27; *see, e.g.*, Doc. 148 at ¶¶ 23, 32, 33, 34, 37, 58, 62).

Plaintiffs begin by arguing that courts routinely presume relevance of officers' mental health records in these types of cases. (Doc. 246 at 3–4). But the Court reads the cases Plaintiffs cite differently. Take *Eze v. Lunsford*, No. 2:23-CV-00976-KWR-KRS, 2025 WL 605018, at *2 (D.N.M. Feb. 25, 2025), as the first example. There, relevance was not contested. Similarly, in

*Chavez v. City of Farmington*, No. CV 15-171 JCH/SCY, 2015 WL 13650097, at *4 (D.N.M. Nov. 25, 2015), the Court addressed privilege, not relevance, and noted that an "officer's privacy interest in his non-mental health medical records outweighs any slight relevance they might have." So too in *Rice v. Reliastar Life Ins. Co.*, No. CIV.A. 11-44-BAJ-CN, 2011 WL 5513181, at *3–5 (M.D. La. Nov. 10, 2011), where the court considered privilege only and had nothing to say about relevance. Accordingly, here—where relevance is hotly contested—the Court will not take for granted that the requested records are relevant.

Plaintiffs also offer cases where courts have analyzed and found psychological records relevant. *See, e.g.*, *Capps v. Dixon*, 593 F. Supp. 3d 146, 151 (D.N.J. 2022) (finding psychological records post-dating a shooting are relevant "because they may demonstrate a pattern by the City of condoning excessive force by its officers . . . . Furthermore, post-incident evidence may be relevant insofar as it may contain specific admissions or information concerning the circumstances surrounding the arrests."); *Est. of Turnbow v. Ogden City*, 254 F.R.D. 434, 438 (D. Utah 2008) (finding an officer's post-shooting stress interview "may be" relevant to a plaintiff's claims against the officer for unspecified reasons); *Kamper v. Gray*, 182 F.R.D. 597, 599 (E.D. Mo. 1998) (finding records an employer has in their possession regarding an officer's involvement in a shooting were relevant and discoverable but providing no more insight into that finding).

But Defendants have cases on their side, too. Primarily, Defendants note that the records underlying Dr. Malinky's letter cannot be relevant because the City never requested or saw them. (Doc. 283 at 9–11). This Court's decision in *King v. City of Columbus*, No. 2:18-CV-1060, 2019 WL 13516345, at *12 (S.D. Ohio Oct. 31, 2019), underpins Defendants' position. There, a police officer shot and killed a child. *Id.* at *1. Like Plaintiffs here, King brought claims for excessive force against the officer and a municipal liability claim. *Id.* Those defendants sought a protective

order to, among other things, shield production of documents "relating to any behavior or psychological issues" concerning the officer. *Id.* at *11. The Court found that the officer's mental health records were "relevant to the allegations against the City of Columbus for maintaining unconstitutional customs or policies." *Id.* at *12. The Court explained, "[I]f the City of Columbus was in possession of mental health records that show it was placing [the officer] on duty while he had mental health issues that could impair his objective reasonableness, then such evidence is relevant to this case." *Id.*

Defendants argue that the holding in *King* implies the converse: records *not* in the City's possession are irrelevant to the question of municipal liability. *See also Erbacher v. City of Fort Collins*, No. 23-CV-01341-CNS-NRN, 2025 WL 71664, at *2 (D. Colo. Jan. 10, 2025) (finding an officer's mental health therapy records were not relevant to his claims against the city because his employer "did not have access to them and therefore did not know their contents"); *Ashford v. City of Milwaukee*, 304 F.R.D. 547, 552 (E.D. Wis. 2015) (finding psychological testing "never shared with decision-makers in the police department would not support a *Monell* claim"). Here, the undisputed record shows that the City was not and is not in possession of the mental health questionnaire responses or notes underlying Dr. Malinky's letter. (Doc. 253 at ¶ 6). In fact, the City does not, as a matter of course, receive more than a letter from a medical professional stating whether an officer is able to safely perform their duties after an officer-involved shooting. (*Id.* at ¶ 5). Therefore, under *King*, these records are seemingly irrelevant to Plaintiffs' *Monell* claims.

Still, Plaintiffs say it matters that Dr. Malinky's letter told the Columbus Division of Police to contact him with any questions. (Doc. 246-5). In their view, this was Dr. Malinky's invitation "to provide the Police Department with the underlying facts" of Harmon's evaluation. (Doc. 246 at 7). Further they say the fact that the City "did not pursue such records may be relevant to *Monell*

liability in and of itself." (*Id.* at 5). Concerning Plaintiffs' interpretation of the letter, their conclusion that Dr. Malinky would have provided the City the underlying records upon request is tenuous at best. It is simply too speculative to assume Dr. Malinky would have provided the questionnaire responses and notes if the City asked based on a common letter sign-off. This is especially true because the City "does not receive details regarding the officer's evaluation" following a critical incident stress debriefing. (Doc. 253 at ¶ 5). At base, no one knows how Dr. Malinky would have responded.

Plaintiffs' other argument requires more nuanced consideration. This Court has found "subsequent incidents" following an officer allegedly violating a person's rights can be "probative material of what polices, practices, or accepted customs existed at the time of the incident at issue." *Abdur-Rahim v. City of Columbus*, No. 2:17-CV-601, 2019 WL 1873222, at *2 (S.D. Ohio Apr. 26, 2019). But Plaintiffs do not seek discovery about "subsequent incidents" similar to the events described in their Second Amended Complaint. *Cf. id.* (defining the discovery at issue as evidence of "subsequent similar events" to the underlying allegations: officers pepper spraying protesters). Rather, the discovery they seek is better classified as subsequent actions—or inactions—on the part of the City in the aftermath of the alleged rights violations. As Plaintiffs submit, at least one court has found this general type of discovery can be relevant to *Monell* claims. *See, e.g.*, *Groark v. Timek*, 989 F. Supp. 2d 378 (D.N.J. 2013) (finding a police department's internal investigations of a shooting relevant to a *Monell* claim). But Plaintiffs do not meet their relevancy burden here.

Plaintiffs' Motion makes no effort to connect this discovery to any of their specific *Monell* theories. As noted, they broadly state that "the fact that the [City] did not pursue such records may be relevant to *Monell* liability." (Doc. 246 at 5). This statement does not sufficiently explain how the underlying psychological records are relevant to any of the four theories of *Monell* liability at

issue. (*See* Doc. 268 at 26–27). Notably, Plaintiffs have not expressly challenged the City's return-to-duty policies. So, the connection between Plaintiff's theories and the requested discovery is not obvious on its face. And Plaintiffs have offered little explanation. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). Even more, Plaintiffs offer no reason for the City to believe that Dr. Malinky—a non-City employee—engaged in a *pro forma* evaluation or that his conclusion was otherwise unreliable. As it stands, Plaintiffs do not meet their burden.

Plus, even if Plaintiffs had done enough to show relevance, that relevance is immaterial in the face of the Court's privilege analysis below.

*b. Excessive Force Claim*

Next, Plaintiffs argue the records underlying Dr. Malinky's evaluation are relevant to "any potential use of excessive force" by Harmon and specifically to "compare his statements at that time with those provided in" his later statements and deposition. (Doc. 246 at 4). These records, however, are irrelevant to Plaintiffs' single excessive force claim alleged against Harmon.

Claims for excessive force under the circumstances presented in the operative complaint are considered under an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395–98 (1989). Under this standard "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. And "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Against this backdrop, this Court has found that an

officer's subjective state of mind or perception at the time of a shooting is not relevant to whether he acted in an objectively reasonable manner. *King*, 2019 WL 13516345, at *7. In that case, the Court found "drug, alcohol, psychological, or psychiatric examinations or tests are irrelevant" to a Fourth Amendment excessive force claim against an officer. *Id.*

The same logic applies here. Harmon's post-incident psychological evaluation cannot provide insight into whether his actions on May 6, 2023, were objectively reasonable. His intent or motivation that the records may shed light on are irrelevant to that inquiry. *See, e.g.*, *id.*; *Dorato v. Smith*, 163 F. Supp. 3d 837, 884 (D.N.M. 2015) ("[E]vidence of [an officer's] psychological health cannot help us to understand whether his actions were 'objectively reasonable,' because his 'underlying intent or motivation' is irrelevant.").

Likewise unpersuasive is Plaintiffs' argument that because Harmon's evaluation was conducted less than two weeks after the shooting, Dr. Malinky's records are relevant to clarifying factual information or to probing Harmon's credibility. (Doc. 246 at 4); *cf. also Kamper*, 182 F.R.D. at 599. Plaintiffs' best case considered a situation where the moving party provided "substantial and credible evidence of medical and psychological ailments relevant to the present dispute"; where the officer's employer undoubtedly knew of his mental health diagnoses prior to a shooting; and where the officer was the only living witness to the same. *Dorato*, 163 F. Supp. 3d at 844, 889 ("The Court does not intend to make it easy for § 1983 plaintiffs to go fishing through police officers' medical and psychological records.") (cataloguing the extensive list of supporting evidence). Plaintiffs have not offered the same type of support here, and Harmon was not the only witness to the May 6 shooting by far.

For these reasons, the Court concludes the records underlying Dr. Malinky's letter are not relevant to Plaintiffs' excessive force claim against Harmon. As before, though, any conceivable relevance is inconsequential in the face of the records' protected status.

*c. Immunity under Ohio Rev. Code § 2744*

Lastly, Plaintiffs contend Dr. Malinky's notes are relevant to Harmon's affirmative defense that he is immune from liability for the three state law claims against him under Ohio Revised Code Chapter 2744. (Doc. 293). Under that law, an employee of a political subdivision is immune from civil liability unless an exception applies. Ohio Rev. Code § 2744(6). One exception is when "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744(6)(b). Relying on *Estate of Lewis v. Anderson*, 2026 WL 1602020 (Ohio Ct. App. 2026), Plaintiffs argue that Harmon's psychological records are relevant to the subjective question of whether he acted "with malicious purpose, in bad faith, or in a wanton or reckless manner" on May 6. (Doc. 292 at 2).

In *Lewis*, a police officer shot and killed a man in his home while executing an outstanding arrest warrant. 2026 WL 1602020, at *1–2. The man's estate brought several state law claims against the officer including civil battery, the intentional infliction of emotional distress, and the deprivation of state constitutional and statutory rights. *Id.* at *2. The officer moved for summary judgment, arguing his use of deadly force was objectively reasonable and, as a result, he was entitled to immunity under Chapter 2744. *Id.* The trial court found a genuine issue of material fact on that issue and denied the motion. *Id.* On appeal, the officer argued the trial court erred because it failed to apply the Fourth Amendment's objective-reasonableness standard in evaluating his use of deadly force and he was entitled to the state immunity as a matter of law. *Id.* at *4. However, the appellate court found that consideration of the objective-reasonableness standard,

though a "useful threshold inquiry," is not a "mandatory 'first step' in a state law statutory immunity analysis involving an officer's use of force during an arrest." *Id.* at *4–5. This was because the immunity applies broadly to political-subdivision employees, not only law enforcement officers. *Id.* at *5. Instead, the court found that the central inquiry when considering an officer's immunity following the use of force during an arrest is "whether the officer reasonably and genuinely perceived the suspect as posing a threat of serious harm to the officer or others." *Id.* at *6. The court then went on to note that if a jury could conclude that the officer's "perceptions of a threat were caused by his own actions or inactions," the jury could find that the officer's actions or inactions rose to the level of recklessness described in Chapter 2744(6)(b). *Id.*

Plaintiffs submit that the state court's rejection of the objective-reasonableness threshold issue and the comment about a jury's consideration of officer's perceptions together show the Court must engage in a subjective analysis when considering Chapter 2744 immunity. But *Lewis* is not the home-run Plaintiffs believe it is.

First, the *Lewis* court was not called to answer the question of relevance of psychological records to Chapter 2744 immunity. This fact alone limits *Lewis*' applicability to the circumstances presented in Plaintiffs' Motion. Especially when the *Lewis* court did not expressly endorse a subjective Chapter 2744 analysis.

More importantly, the *Lewis* parties did not allege federal claims or federal qualified immunity defenses. *Id.* at *2. This matters. When an officer defendant, as here, alleges both federal qualified immunity for excessive force claims and state-law immunity for state law claims, courts "review the state-law immunity defense through the lens of federal qualified immunity analysis" if the immunities rest on the same questions of material fact. *Raimey v. City of Niles*, 77 F.4th 441, 451 (6th Cir. 2023) (considering state law claims of assault and battery); *cf. Cooper v.*

*City of Columbus*, No. 22-3251, 2023 WL 1434055, at *9 (6th Cir. Feb. 1, 2023) ("[I]n the context of a police officer's use of deadly force, the analysis coincides: '[I]f an officer has probable cause to believe that a person poses an immediate threat of serious injury, the officer's use of deadly force against that person is not reckless.'" (citation omitted)). In other words, "[t]he officers' state-law statutory-immunity defense . . . 'stands or falls with their federal qualified immunity defense.'" *Wright v. City of Euclid*, 962 F.3d 852, 878 (6th Cir. 2020).

As a result, "where an officer acts reasonably under the Fourth Amendment, his conduct cannot have been reckless under Ohio law." *King v. City of Columbus*, No. 23-3818, 2024 WL 3738581, at *5 (6th Cir. Aug. 9, 2024); *cf. Pollard v. City of Columbus*, 780 F.3d 395, 404 (6th Cir. 2015) ("If the officers were objectively reasonable in shooting Bynum, it logically follows that they could not have been reckless in shooting Bynum."); *Cantrell v. Scioto Cnty.*, No. 25-3817, 2026 WL 2019514, at *5 (6th Cir. July 13, 2026) ("[B]ecause the standard for statutory immunity under Ohio law 'overlaps' with the federal standard for qualified immunity under federal law, Officer Boggs is likewise entitled to immunity from Jessie's state-law claim."). And more specifically, a "finding that an officer acted unreasonably is a necessary prerequisite to finding that his conduct was" at least reckless under Ohio law. *King*, 2024 WL 3738581, at *5 (citing *Jordan v. Howard*, No. 29190, 2021 WL 5275974, at *13 (Ohio Ct. App. Nov. 12, 2021) (noting it would be "factually and logically inconsistent" to conclude an officer was reckless in causing a decedent's death if the officers' use of deadly force was reasonable)).

In the end, because Plaintiffs' excessive force claim and Harmon's qualified immunity defense turn on whether Harmon's actions on May 6 were objectively reasonable, so does Harmon's state immunity defense. *See Lewis*, 2026 WL 1602020, at *5 ("[I]f an officer's use of force is objectively reasonable under the circumstances, then it cannot satisfy the heightened

culpability necessary to establish recklessness or wantonness, much less bad faith or malicious conduct."); *Wright*, 962 F.3d at 878. Therefore, any subjective information Plaintiffs could glean from Dr. Malinky's psychological evaluation notes is not relevant to Harmon's asserted defenses.

In sum, Plaintiffs have not met their relevancy burden. But beyond relevance, the records are out of Plaintiffs' reach for another reason: they are protected by the psychotherapist-patient privilege.

*2. The Psychotherapist-Patient Privilege*

Even if the psychological records are relevant, Plaintiffs still have a high hurdle to overcome. As noted above, in response to Request for Production 13, Harmon objected on the grounds that the psychotherapist-patient privilege protects his records from disclosure. (Doc. 246-1; *see also* Doc. 283 at 11–14). Plaintiffs counter that the privilege never attached because Defendant Harmon was aware his conversations with Dr. Malinky would be shared with his employer. (Doc. 246 at 6–8; Doc. 292 at 3–5).

The psychotherapist-patient privilege generally applies to "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996); *see also In re Zuniga*, 714 F.2d 632, 639 (6th Cir. 1983). The importance of this privilege cannot be overstated. As the Supreme Court has recognized, the privilege facilitates "the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem." *Jaffee*, 518 U.S. at 11 ("The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance."). In *Jaffee*, the Court went on to caution: "If the privilege were rejected, confidential conversations between psychotherapists and their patients would surely be chilled, particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation." *Id.* at 11–12.

Relevant here, and specific to the context of discovery of police fitness for duty reports, courts have concluded "that where an officer has an expectation of confidentiality in a psychological examination, the privilege shields the psychological records from disclosure." *Capps*, 593 F. Supp. 3d at 154 (collecting cases); *Hibbs v. Marcum*, No. 3:16-CV-146-TBR-LLK, 2018 WL 953347, at *4 (W.D. Ky. Feb. 20, 2018) (noting an officer's testimony that he expected communications made during psychotherapy to be private and confidential); *Mitchell v. City of Warren*, No. 09-CV-11480, 2012 WL 1405856, at *2 (E.D. Mich. Apr. 23, 2012) (finding the privilege applied where an employer received a report saying whether an officer was fit for duty but there was no indication that the officer was aware his communications with the psychotherapist would be disclosed to third parties); *see also Scott v. Edinburg*, 101 F. Supp. 2d 1017, 1020 (N.D. Ill. 2000) (noting the "threshold requirement for the existence of the psychotherapist patient privilege is that there be an expectation by the patient that the communications with the psychotherapist will remain with the psychotherapist and will not be disclosed to others"). That said, courts have found the privilege "does not apply when the party asserting the privilege has no reasonable expectation of confidentiality regarding counseling sessions he received." *Capps*, 593 F. Supp. 3d at 153.

Here, Harmon had a reasonable expectation of confidentiality concerning his communications with Dr. Malinky. As discussed in detail above, after an officer engages in a critical incident stress debriefing with a non-City-employee medical professional like Dr. Malinky, the City "receives *only* a letter from the medical professional." (Doc. 253 at ¶ 5 (emphasis added)). In other words, the healthcare provider does not give the City underlying notes, questionnaire responses, or medical records. The letter reflects solely whether the officer is "able to safely perform their duties as a police officer," without disclosing "any details regarding the officer's evaluation." (*Id.*). Given this is the normal course, there is no reason that Harmon—or a reasonable person in his position—

would believe that his underlying psychological records or his communications with Dr. Malinky would be shared with the City, or anyone else. (*See* Doc. 283 at 14).

Despite the City's policy, Plaintiffs counter that Defendant Harmon was "well aware" his conversation with Dr. Malinky was not privileged. They cite to Defendant Harmon's testimony that he told an assistant chief at the Columbus City Police Department he was "frustrated with how long it took to be interviewed by a psychologist so I could go back to work." (Doc. 282-1 at 88–89). Plaintiffs say the testimony shows Harmon "was aware of the process of the required Critical Incident Stress Debriefing with a psychologist, and that such conversations would be disclosed to his employer." (Doc. 246 at 7). Their interpretation of the deposition testimony is inapposite. Harmon's awareness that a psychologist's sign off was required for him to return to work in no way demonstrates that he believed his communications with the psychologist would be shared with the City. If anything, Harmon's comment shows that he knew only that he needed to meet with Dr Malinky—not that the City would also evaluate his records before he could return to work. And to the extent Plaintiffs additionally assert Dr. Malinky's invitation for questions demonstrates a lack of confidentiality, the Court already rejected that interpretation. The Court concludes that the psychotherapist-patient privilege applies to the records underlying Dr. Malinky's letter.

Still, it is possible for a patient to waive the psychological privilege "if the psychotherapist-patient records are disclosed to a third party." *Green v. Taylor*, No. 1:03-cv-1804, 2005 WL 8167545, at *2 (N.D. Ohio May 4, 2005) (citation omitted); *see Phelps v. Coy*, 194 F.R.D. 606, 608 (S.D. Ohio 2000) (denying a motion for a protective order where communications between the defendant and a psychologist were disclosed to the defendant's employer). Several courts have addressed the situation this Court now faces. Specific to psychological evaluations of police officers following shootings, the privilege is not waived "if the only information provided to the police is

whether the officer passed or failed the exam." *Green*, 2005 WL 8167545, at *2 (finding the privilege maintained where the plaintiff "provided no evidence that information from a psychological evaluation was shared with the police department"); *see also Mitchell*, 2012 WL 1405856, at *2 (finding privilege where a police department received a letter providing the officer's fitness for duty but not the psychological evaluation reports); *Caver v. City of Trenton*, 192 F.R.D. 154, 162 (D.N.J. 2000) (finding notable that a police department was given only a pass or fail recommendation of fitness for duty). The uncontroverted record shows the City received only a letter finding Harmon fit for duty, without additional information or explanation. (Doc. 253 at ¶ 6). Because the underlying records or communications were never disclosed, the psychotherapist-patient privilege remains intact.

One final point. The Court emphasizes the considerations relevant to the psychotherapist-patient privilege outlined in *Jaffee*. Specific to officer evaluations following uses of force, police departments have "a strong policy interest in maintaining the confidentiality of its evaluative process, and permitting its officers the opportunity to obtain unfettered assistance through free communication with healthcare providers, who in turn ensure officers are fit for duty." *Williams v. Miles*, No. CV1812973BRMZNQ, 2020 WL 3546808, at *4 (D.N.J. June 30, 2020). Ordering production of evaluation records meant to be confidential and not otherwise disclosed "would serve to disincentivize an officer from revealing sensitive information to a psychotherapist for fear that it might later become the subject of litigation." *Id.* While this Court must consider assertions of privilege on a case-by-case basis, the circumstances presented in this case and the significant policy interests underpinning the psychotherapist-patient privilege align.

In sum, the Court concludes that Plaintiffs have not met their burden to show any records, notes, or questionnaire responses underlying Dr. Malinky's fitness for duty letter as to Harmon are

relevant to the claims or defenses asserted in this case. And even if they could make that showing, the records are protected by the psychotherapist-patient privilege. Consequently, the Court **DENIES** Plaintiffs' Motion (Doc. 246).

**B. Motion to Compel Deposition Answer**

Relatedly, Plaintiffs filed a Motion to Compel about Harmon's deposition. (Doc. 251). Harmon's deposition was held on October 30, 2025. (Doc. 164, 282). At the deposition, Plaintiffs' counsel asked Harmon if he saw a psychologist or psychiatrist after the shooting. (Doc. 282-1 at 62). Harmon responded that he saw Dr. Malinky once. (*Id.*). Then, Plaintiffs' counsel asked if he had ever been diagnosed with a mental health condition. (*Id.* ("Now, have you ever been diagnosed with a mental health condition?")). Harmon's counsel objected on privilege grounds and instructed her client not to answer. (*Id.*). Taking his counsel's advice, Defendant Harmon did not answer. (*Id.* at 62–63). Plaintiffs now ask the Court to compel Defendant Harmon to answer the question. (Doc. 251 at 7; *see also* Doc. 293). Defendants resist based on relevance, overbreadth, and the psychotherapist-patient privilege. (Doc. 284; *see also* Doc. 294).

*1. Relevance and Overbreadth*

Similar to their other motion, Plaintiffs assert that whether Harmon has "ever been diagnosed with a mental health condition" is relevant in several ways. Like before, Plaintiffs argue relevance as to their excessive force claim against Harmon, Harmon's state immunity defense, and their *Monell* claim against the City. (Doc. 251 at 5–6; Doc. 292 at 2; *see also* Doc. 293).

To begin, Plaintiffs' relevancy arguments pertaining to their excessive force claim and Harmon's immunity defense are substantially similar to those addressed above. (*Compare* Doc. 246 at 3–4 *with* Doc. 251 at 4–7; *see also* Doc. 292 at 2–3 (presenting the same argument for both motions as to the immunity defense)). The Court's analysis applies here as well. That is to say,

the deposition answer is irrelevant to an objectively reasonable inquiry. *See, e.g.*, *King*, 2019 WL 13516345, at *7; *Dorato*, 163 F. Supp. 3d at 884; *Raimey*, 77 F.4th at 451; *Wright*, 962 F.3d at 878; *King*, 2024 WL 3738581, at *5.

Plaintiffs' relevancy submission as to their *Monell* claim is slightly different from before, but no more successful. They specifically argue that whether Harmon has been diagnosed with a mental health condition is relevant to "(a) the likelihood of prior misconduct (pattern or history); (b) whether the department knew or should have known about risk; (c) potential municipal liability under *Monell*." (Doc. 251 at 5–6 (also alleging the information is relevant to the City's knowledge of Harmons "propensity toward violence")). As noted above, this Court has found that psychological testing could be relevant to a *Monell* claim if an officer's employer was aware of those records. *King*, 2019 WL 13516345, at *8 ("If the City of Columbus put Officer Mason on duty knowing he had issues with perception . . . that had an [e]ffect on his objective reasonableness, then such evidence would be relevant . . . And if the City of Columbus had a policy of putting him on the street knowing he was more likely to act in an objectively unreasonable manner, then the City could be potentially held liable under Monell for deliberate indifference.")). This logic applies to a mental health diagnosis as well.

But Plaintiffs have not met their burden to demonstrate relevancy here, where there is no more than conjecture that the City had access to Harmon's mental health diagnoses. While Plaintiffs submit that Defendant Harmon's psychological records "should have been compiled when he underwent an evaluation following the incident on May 6, 2023, if he hadn't had one when interviewing for the position with the police department," this is speculation. (*See also* Doc. 253 at ¶ 6). Significantly, at the time they filed this Motion, Plaintiffs had access to Harmon's personnel and disciplinary files from discovery. (*See* Doc. 284 at 10). Yet Plaintiffs offer nothing

suggesting records detailing Harmon's mental health diagnoses were ever created, compiled, then provided to the City. It is thus not as obvious as Plaintiffs assert. (Doc. 253 at ¶ 6). Additionally, to the extent that Plaintiffs submit that the information is broadly relevant to "potential municipal liability under *Monell*," this assertion is fatally unspecific as the Court has already discussed.

Further, as Defendants argue (Doc. 284 at 4–5), Plaintiffs' question, as asked, seeking any and all of Harmon's mental health conditions—no matter when he was diagnosed or whether the City ever saw the diagnosis—is overbroad on its face.[1] *Cf. Hibbs*, 2018 WL 953347, at *5 (finding a request for pre-employment psychiatric evaluations overly broad because "it [was] not limited to pre-employment psychiatric evaluations performed in connection with his employment with law enforcement or at the request of a law enforcement type of employer" and because it was "unlimited in scope").

For these reasons, the Court concludes Plaintiffs have not met their burden to show the deposition answer is relevant to the claims and defenses asserted in this case and the question is overbroad on its face. Moreover, as before, this information is also protected by the psychotherapist-patient privilege.

### 2. *The Psychotherapist-Patient Privilege*

Like their first Motion, Plaintiffs argue that the psychotherapist-patient privilege does not apply to Harmon's mental health conditions.[2] (Doc. 251 at 8–9). They assert Harmon did not have a reasonable expectation of privacy as to any records diagnosing him with a mental health condition since any "testing was done to obtain, maintain, or continue employment as a police officer." (*Id.*).

---

[1] Plaintiffs now say they only want to know of "any mental health condition(s) or diagnosis for Defendant Harmon previous to May 6, 2023." (Doc. 251 at 7). The Court's findings apply equally to this amended ask.

[2] Plaintiffs spend a portion of their Motion arguing against an invocation of physician-patient privilege. (Doc. 251 at 8). Defendants' response does not justify Harmon's objection under the physician-patient privilege. (Doc. 284 at 11–13).

They further state "[a]ll of that information is not privileged as it is presumed and known that it would be seen and reviewed by" the City. (*Id.* at 9).

Up front, the Court is puzzled by Plaintiffs' assertion that it is "presumed and known" that Harmon's historical mental health diagnoses would be known to the City. They do not offer support for this assumption. There is simply nothing in the record before the Court indicating Harmon's supposed diagnoses were shared with his employer or that his employer required them to allow Harmon to "obtain, maintain, or continue employment as a police officer." Again, Plaintiffs have access to Harmon's personnel and disciplinary files. If the files reveal such information, Plaintiffs have not shared it with the Court. And it is unchallenged that the City did not receive any historical mental health records or diagnoses with Dr. Malinky's fitness to return to duty letter. (Doc. 253 at ¶ 6).

Against this backdrop, and for the same reasons as explained above, Harmon has a reasonable expectation of confidentiality in his mental health diagnoses, and he did not waive the privilege. His answer to the deposition question is, therefore, protected by the psychotherapist-patient privilege.

***

The Court again concludes Plaintiffs have not met their relevancy burden, the question asked is overbroad, and the information sought is protected by the psychotherapist-patient privilege. For these reasons, Plaintiffs' second Motion to Compel (Doc. 251) is **DENIED**.

**C. Motion for Leave to Take Depositions After Close of Discovery.**

Next, Defendants move for leave to issue and serve deposition subpoenas after the close of discovery on two witnesses, Jayona Ford and Jonez Martin. (Doc. 280). Plaintiffs do not object to the request. (Doc. 287). And in fact, the parties have collaborated on the timing and method of the depositions. (Doc. 291). For good cause shown, the Motion (Doc. 280) is **GRANTED**. These

depositions may proceed.

### D. Case Schedule

Finally, the Court considers next steps in this litigation. As it stands, discovery is closed, except for the depositions noted above. (Doc. 249). Because there are no more discovery motions requiring the Court's attention, the dispositive motions deadline may be reset. The Court **SETS** the parties' dispositive motions deadline to **October 30, 2026**. Response and reply deadlines shall follow the Local Rules. The parties are **WARNED** the Court will not extend these deadlines further.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motions to Compel (Docs. 246, 251) are both **DENIED**. Defendants' Motion for Leave (Doc. 280) is **GRANTED**. Dispositive motions are due on or before October 30, 2026.

IT IS SO ORDERED.

Date: September 10, 2026

/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE