**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

JALEN BRADLEY, *et al.*,

Plaintiffs,

v.

CITY OF COLUMBUS, OHIO, *et al.*,

Defendants.

Case No. 2:24-cv-03118

Judge Michael H. Watson

Magistrate Judge Kimberly A. Jolson

**DEFENDANT CARL HARMON'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF JA-DAWN BRADLEY'S CLAIMS**

Defendant Carl Harmon, pursuant to Fed. R. Civ. P. 56(a), moves this Court for an order granting summary judgment on Plaintiff Ja-Dawn Bradley's claims and dismissing her complaint in its entirety. Officer Harmon is entitled to qualified immunity on Ja-Dawn's federal claims, whether those claims arise under the Fourth or Fourteenth Amendments. His use of force on May 6, 2023 was not a violation of her constitutional rights and, further, no case clearly established that his use of force was unconstitutional as of May 6, 2023. Officer Harmon is also entitled to statutory immunity on Ja-Dawn's state law claims, as she cannot show that his actions were taken with "malicious purpose, in bad faith, or in a wanton or reckless manner" so as to be outside his statutory immunity. Finally, even setting aside the issue of statutory immunity, Ja-Dawn cannot establish the elements of her state law claims. A memorandum in support follows.

Respectfully submitted,

*/s/ David J. Dirisamer*
David J. Dirisamer (0092125)-Trial Atty.
Lee Ann Rabe (0077170)
Aaron D. Epstein (0063286)
*Assistant City Attorneys*
CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY
77 North Front Street
Columbus, Ohio 43215
(614) 645-7385
(614) 645-6949 (fax)
djdirisamer@columbus.gov
larabe@columbus.gov
adepstein@columbus.gov
*Attorneys for Defendants*

## MEMORANDUM IN SUPPORT

### I. Background and Facts.

In the early morning hours of May 6, 2023, an intoxicated Plaintiff Ja-Dawn Bradley ("Ja-Dawn") provided a loaded firearm to Plaintiff Jalen Bradley ("Jalen"), despite knowing that he was both intoxicated and only 20 years old. Ja-Dawn Tr., ECF No. 206-1, 165:20-166:15, 174:19-175:11; Jalen Tr., ECF No. 205-1, 24:18-19. Shortly after she did so, Jalen engaged in a gun battle with a group of men on a crowded High Street sidewalk as bars were closing following Cinco de Mayo celebrations. Motion for Summary Judgment, ECF No. 304, PAGEID 6451-6454. The basic account of the events leading to that moment are set forth in the motion for summary judgment brought by Defendant Carl Harmon ("Officer Harmon") on Jalen's claims, and he incorporates those facts as if set forth here. *Id.*, PAGEID 6450-6457.

Prior to the shootings, Ja-Dawn had been drinking heavily as she moved from bar to bar with her friends and family. Ja-Dawn Tr., ECF No. 206-1, 143:9-15, 148:9-17, 161:2-14. She had also been smoking marijuana, both prior to going out that night and at least once during the group's barhopping. *Id.*, 146:1-4, 153:15-154:4. While she was with them, members of her group, including Jalen, engaged in multiple arguments with Jayden Jones and other men. Motion for Summary Judgment, ECF No. 304, PAGEID 6450-6451. She walked just steps behind Jalen as he approached those men, including Jones, on a High Street sidewalk and began to draw from his waistband the firearm Ja-Dawn had provided him. Motion for Summary Judgment, Ex. F-1, ECF No. 304-6, 4:41-4:46[1]; Jalen Tr., ECF No. 205-1, 294:2-13. Once gunfire rang out, Ja-Dawn ran—she was headed for the garage where their car was parked. Ja-Dawn Tr., ECF No. 206-1, 188:1-8; Motion for Summary Judgment, Ex. F-2, ECF No. 304-6, 4:47-4:53. As she ran, Jalen and other

---

[1] The referenced videos will be manually filed. *See* ECF Nos. 301-302.

men were shooting from various directions. Ja-Dawn Tr., ECF No. 206-1, 194:2-19, 199:8-13; Jalen Tr., ECF No. 205-1, 223:18-224:2, 239:19-240:8. Once she realized Jalen had been shot, she ran back to him and attempted to pick him up. Ja-Dawn Tr., ECF No. 206-1, 188:12-19. But when shots resumed, she ran back behind a large planter. *Id.*, 188:12-19.

Ja-Dawn was struck by bullets in four places: her foot, her leg, her buttocks, and her breast. Ja-Dawn Tr., ECF No. 206-1, 258:17-22. While Ja-Dawn was positive that the injury to her foot was caused by the men with whom Jalen engaged in a gun battle, she does not know the source of her other injuries. *Id.*, 237:2-7. Ja-Dawn was never the intended target of any of Officer Harmon's shots. Harmon Tr., ECF No. 282-1, 59:16-19.

## II. Argument.

Police officers are entitled to qualified immunity "unless their conduct violates clearly established law." *Zorn v. Linton*, 607 U.S. 568, 571-72 (2026) (*per curiam*). "Qualified immunity provides police officers 'breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law.'" *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (quoting *Stanton v. Sims*, 571 U.S. 3, 6 (2013)). A police officer is entitled to qualified immunity "if officers of reasonable competence could disagree on the issue." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The "plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity." *Cooper v. City of Columbus*, No. 22-3251, 2023 U.S. App. LEXIS 2629, at *9 (6th Cir. Feb. 1, 2023) (quoting *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011)) (internal quotation omitted). When assessing qualified immunity, a court applies a "well-established two-prong test": (1) whether the officer's actions violated a constitutional right, when the facts are taken in the light most favorable to the plaintiff, and (2) whether that constitutional right was clearly established.

*Mullins*, at 765 (citing *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)). Courts have discretion to consider either prong of the test first. *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). In this case, Ja-Dawn has no evidence to support either prong of the qualified-immunity test.

**A. Ja-Dawn Bradley cannot establish a Fourth Amendment violation as she cannot show that she was "seized" by Officer Harmon.**

Ja-Dawn's claim first fails because she was never "seized" by Officer Harmon. Ja-Dawn brings a claim under 42 U.S.C. §1983 against Officer Harmon asserting that he used excessive force against her. SAC, ECF No. 148, PAGEID 2167-2168. Such a claim, as a necessary predicate, requires a seizure to have taken place. *Arthur v. Krause*, 186 F.4th 405, 411 (6th Cir. 2026) (citing *Slusher v. Carson*, 540 F.3d 449, 454 (6th Cir. 2008)). A seizure, within the meaning of the Fourth Amendment, can occur in one of two ways: "(1) use of force with the intent to restrain; or (2) show of authority with acquisition of control." *Id.* (quoting *Campbell v. Cheatham Cnty. Sheriff's Dept.*, 47 F.4th 468, 476 (6th Cir. 2022)). Both fail here.

For the first, the officer's intent is important; accidental force does not suffice. *Torres v. Madrid*, 592 U.S. 306, 317 (2021). Officer Harmon never had an intent to restrain Ja-Dawn; it is undisputed that Officer Harmon never deliberately shot at her. Harmon Tr., ECF No. 282-1, 59:16-19; Motion for Summary Judgment, Ex. B, ECF No. 304-2, PAGEID 6487-6488. While the Sixth Circuit's analysis of "bystander" claims has recently changed (discussed further below), one point remains constant: in order to have been "seized," the individual making the claim must have actually been struck by the officer's bullet. *See, e.g., Kilnapp v. City of Cleveland*, 167 F.4th 909 (6th Cir. 2026), *cert. denied Kilnapp v. Gannon*, 2026 U.S. LEXIS 4198 (Oct. 19, 2026) (officer shot by fellow officer was seized; intent to fire at suspect was sufficient); *see generally Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000) (passenger shot by officer engaging driver-suspect; no

seizure for any individual other than the "deliberate object" of the use of force). Ja-Dawn cannot establish that she was struck by any bullet fired by Officer Harmon.

Ja-Dawn suffered several injuries on the night in question. She does not know the cause of some of her injuries—and for those for which she does know a cause, the cause was not Officer Harmon. Ja-Dawn was injured in four places: her foot, her leg, her buttocks, and her breast. Ja-Dawn Tr., ECF No. 206-1, 258:17-22. Multiple people other than Officer Harmon and Jalen were firing weapons that night; Plaintiffs have indicated that, before Officer Harmon began firing, men were shooting at them from multiple directions. *See* Ja-Dawn Tr., ECF No. 206-1, 194:2-19, 199:8-13; Jalen Tr., ECF No. 205-1, 223:18-224:2, 239:19-240:8; Motion for Summary Judgment, Ex. A-5, ECF No. 304-1, PAGEID 6478-6479 (a total of at least 96 bullet casings from at least eight different guns were recovered). At least one of her injuries—to her foot—was definitively caused by men other than Officer Harmon. Ja-Dawn Tr., ECF No. 206-1, 197:20-24 ("Q: Where did [the men] hit you? A: My foot."). Beyond that, Ja-Dawn is "not really sure who shot [her]." Ja-Dawn Tr. Ex. 5 (manually filed), ECF No. 207, 237:2-7. The morning after the shooting, she told investigators from the Bureau of Criminal Investigation that she had no idea who shot her. Ja-Dawn Tr. Ex. 28 (manually filed), ECF No. 207, 12:25-12:25. But she ***was*** able to say that she did not think police officers shot her, because the officers were in front of her and she was shot from behind. *Id.*, 20:02-20:35. Even if she had opined that a police officer shot her, in order to prove her claim against Officer Harmon she would still need to produce evidence that the bullet(s) came from Officer Harmon's gun. Without any evidence showing that one of Officer Harmon's shots struck her, Ja-Dawn was not seized by force; her claim fails.

The second method—seizure by control—also fails. Such a seizure requires "either voluntary submission to a show of authority or the termination of freedom of movement." *Arthur*,

186 F.4th at 411 (quoting *Torres*, 592 U.S. at 322). Intent by the officer to control the individual "seized" is crucial. *Id.* at 412. Further, this form of seizure requires that "the officer…actually take control" of the individual through the means "set in motion" to effect that control. *Id.* at 411. Again, there is no indication that Officer Harmon ever intended to take control of Ja-Dawn, nor that he ever did so, let alone through the use of deadly force. This method also fails, and with it, Ja-Dawn's claim for an unlawful seizure.

**B. Any seizure under the circumstances presented here was a reasonable use of force, not a Fourth Amendment violation, and thus Officer Harmon is entitled to qualified immunity.**

Even if Ja-Dawn could establish a seizure by Officer Harmon—which she cannot—her claim still fails because Officer Harmon is entitled to qualified immunity. Officer Harmon's use of force on May 6, 2023, was objectively reasonable, as set forth in detail in his motion for summary judgment on Jalen's claims. Motion for Summary Judgment, ECF No. 304, PAGEID 6457-6465. Further, it was not clearly established that Officer Harmon's use of force, under the circumstances he was presented with on May 6, 2023, would be considered unconstitutional. *Id.*, PAGEID 6465-6466. Those arguments apply equally to Ja-Dawn's claims under the Fourth Amendment and Officer Harmon incorporates them as if set forth in full here.

**C. Even if Ja-Dawn's claims are assessed under the Fourteenth Amendment, Officer Harmon is still entitled to qualified immunity.**

However, Officer Harmon is also entitled to qualified immunity with regard to Ja-Dawn's claims on another basis—prior to February 18, 2026, an officer's use of force could only effect a seizure on the "deliberate object of their exertion of force." *Claybrook*, 199 F.3d at 359; *compare Kilnapp*, 167 F.4th at 913. Thus any potential Fourth Amendment violation vis-à-vis Ja-Dawn was not clearly established. "To find that a right is clearly established, courts generally 'need to identify a case where an officer acting under similar circumstances…was held to have violated' the

Constitution." *Zorn*, 607 U.S. at 572. "The relevant precedent must define the right with a 'high degree of specificity,' so that 'every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

As of May 6, 2023, bystander claims such as the one brought by Ja-Dawn were not evaluated under the Fourth Amendment. They were instead "adjudged according to substantive due process norms." *Claybrook*, 199 F.3d at 359. That is, they were subject to an analysis under the Fourteenth Amendment. For liability to attach to a police officer, therefore, his actions must have been those that "shock[] the conscience." *Id.*

Ja-Dawn never pleaded a Fourteenth Amendment claim and never alleged that any of Officer Harmon's actions met the "shocks the conscience" standard. *See generally* SAC, ECF No. 148. However, even reading her Fourth Amendment claim as one under the Fourteenth Amendment, Ja-Dawn cannot establish a violation. In a chaotic situation like that of May 6, 2023, an officer's actions only "shock the conscience" when they involve "force employed 'maliciously and sadistically for the very purpose of causing harm' rather than 'in a good faith effort to maintain or restore discipline.'" *Claybrook*, 199 F.3d at 359 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998)). Here, the entire situation from the first shot to the last took less than 40 seconds. Motion for Summary Judgment, Ex. J-1, ECF No. 304-10, 5:44-6:20. Such a rapidly developing, dangerous situation afforded the responding officers, including Officer Harmon, no time for a deliberate investigation and response. Rather, he was forced to make "split-second" decisions in an effort to restore discipline—and public safety—when a gun battle erupted on a crowded High Street as bars closed following Cinco de Mayo celebrations.

Moreover, accidental injuries incurred when force is directed at another individual have been held as insufficient to establish a violation of the Fourteenth Amendment. *Piñeda v. Hamilton*

*Cnty.*, No. 1:15-CV-693, 2016 U.S. Dist. LEXIS 32540, at *10 (S.D. Ohio Mar. 14, 2016) (no violation when plaintiff struck in the head accidentally by an officer's baton); *Black v. City of Blue Ash*, No. 1:08-CV-00584, 2010 U.S. Dist. LEXIS 25155, at *23 (S.D. Ohio Mar. 17, 2010) (no violation when plaintiff passenger injured by glass broken when officer shot driver of the vehicle); *see also Buck v. City of Highland Park*, 733 F. App'x. 248, 253-54 (6th Cir. 2018) (plaintiff who was shot while officer was aiming at nearby suspect does not state a plausible claim under the Fourteenth Amendment). Ja-Dawn can offer no evidence that Officer Harmon acted "maliciously or sadistically" toward her. It is undisputed that Officer Harmon never directed his fire toward Ja-Dawn. Harmon Tr., ECF No. 282-1, 59:16-19; Motion for Summary Judgment, Ex. B, ECF No. 304-2, PAGEID 6487-6488. Further, Officer Harmon was only briefly aware that Ja-Dawn was close to Jalen and was not aware of her continued presence while he engaged with Jalen. Harmon Tr., ECF No. 282-1, 37:20-39:7. Without being aware of her presence, he cannot have acted "maliciously and sadistically" toward her. *Claybrook*, 199 F.3d at 360-61 (citing *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994)).

Ja-Dawn's claim fails under a Fourteenth Amendment analysis. And even if she could show a violation under the ***Fourth*** Amendment, it was not clearly established in May 2023 that a Fourth Amendment analysis was the proper standard. *Kilnapp*, 167 F.4th at 928 (granting qualified immunity on this prong). Officer Harmon is entitled to qualified immunity on Ja-Dawn's claims under 42 U.S.C. §1983.

### C. Officer Harmon is entitled to R.C. 2744 immunity for the assault and IIED claims.

Officer Harmon is also entitled to immunity under Ohio Rev. Code 2744.03(A)(6) for Ja-Dawn's state law claims. As with Jalen's claims, Officer Harmon's entitlement to qualified immunity for Ja-Dawn's federal claims also entitles him to immunity pursuant to state law. Motion

for Summary Judgment, ECF No. 304, PAGEID 6466-6468. Further, even if statutory immunity did not apply, Ja-Dawn cannot establish the elements of either her assault or intentional infliction of emotional distress claims. *Id.*, PAGEID 6468. Officer Harmon incorporates his arguments on those issues as if set forth fully here.

**III. Conclusion.**

Ja-Dawn Bradley's claims against Officer Harmon fail because she was never "seized" by his use of force on May 6, 2023. Even if she was seized, her claims fail because Officer Harmon's use of force that day was objectively reasonable. And her federal claims further fail because no case would have clearly put Officer Harmon on notice that his actions were unconstitutional. Officer Harmon is entitled to qualified immunity.

Her state law claims fail for a similar reason: Officer Harmon is entitled to statutory immunity because Ja-Dawn cannot establish that his actions were "with malicious purpose, in bad faith, or in a wanton or reckless manner." Even setting immunity aside, Ja-Dawn cannot establish the elements of either state law claim (assault or intentional infliction of emotional distress).

For the foregoing reasons, Defendant Carl Harmon respectfully requests that this Court issue an order granting him summary judgment on Plaintiff Ja-Dawn Bradley's remaining claims, dismissing her Complaint in its entirety, assessing costs to Ms. Bradley, and granting such other relief as this Court finds just.

Respectfully submitted,

*/s/ David J. Dirisamer*
David J. Dirisamer (0092125)-Trial Atty.
Lee Ann Rabe (0077170)
Aaron D. Epstein (0063286)
*Assistant City Attorneys*
CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY
77 North Front Street
Columbus, Ohio 43215
(614) 645-7385
(614) 645-6949 (fax)
djdirisamer@columbus.gov
larabe@columbus.gov
adepstein@columbus.gov
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 30, 2026, I served the foregoing on all parties of record via the Court's CM/ECF system.

*/s/ David J. Dirisamer*
David J. Dirisamer